MacKenzie vs. Garnett, Stubbs & Company.

Under the statutes of this State, no sort of pretence, trick or device to hide usury can be effectual. Whenever it is detected, all the usury is forfeited; and if the principal and legal interest has all been paid, and the contract is all for usury, nothing can be recovered under such contract, because all is illegal and all forfeited.

(a) Where suit was brought on certain contracts in respect to the delivery of a specified number of bales of cotton, on which a certain amount per bale was to be paid, the payment to be made whether the cotton was delivered or not, and where the defendant set up that the contracts were made cotemporaneously with certain promissory notes given for the loan of money at eight per cent. and that the contracts were really for usury and were without legal consideration, all of the principal and legal interest having been paid, it was error to charge to the effect that, although the consideration of the contracts sued on may have been to get time extended for the payment of money borrowed, such indulgence would be a valuable consideration and would support the contract. Nor was this cured by the fact that subsequently the judge charged in general terms that usury could not be covered up by any device whatever.

(b) In such a case, the judge should have charged to the effect that if, in addition to eight per cent. already exacted and paid by the defendant, these contracts added an additional sum, whether payable in commissions for handling cotton-bales or in coin, for the loan of the same money, these contracts would be entirely for usury, and the jury would be authorized in so finding; but if the consideration was solely for the manipulation of the cotton, and not for additional interest over eight per cent. for the loan of the money on time, or an extension of time by renewal, then the law would authorize the upholding the contract. The intention of the parties and the truth of the case—whether the contracts were made to give and to get time, or whether it was to handle the cotton and make the profits on such handling alone that caused the making of the contracts—were for the jury to determine.

(c) The law of South Carolina differs from that in this State.

November 23, 1886.

Interest and Usury. Contracts. Before Judge Carswell. Burke Superior Court. May Term, 1886.

Garnett, Stubbs & Company brought suit against James

H. MacKenzie to recover $462.25, besides interest, on three written contracts, the first of which was as follows:

" In consideration of fourteen hundred and ten dollars and twenty-four cents advanced, or to be advanced this year, to me by Garnett, Stubbs & Company, cotton factors, of Savannah, Georgia, as well as in consideration of one dollar to me paid by them this day, I hereby agree to ship to them by or before January 1st, 1885, not less than (141 b c) one hundred and forty-one bales of upland cotton, and to pay to them the usual commission and charges thereon. Should I fail to ship the same or any part thereof, I agree to pay to them, on January 1st, one dollar per bale on all such deficiency."

The second was of like form, was for $1,657.91 advanced or to be advanced that year, provided for the shipment of 157 bales of cotton or, on failure thereof, for the payment of commissions at $1.25 per bale. The third was similar to the second, and agreed to ship 100 bales, or to pay $1.25 per bale commissions, stating the consideration to be $1,185 advanced or to be advanced that year.

The defendant pleaded the general issue; that the contracts were without consideration; that they were made at the same time that notes for like amounts were given bearing eight per cent. interest; that these had been paid; that the contracts have no consideration except that of allowing more than eight per cent. for the use of money loaned to the defendant; and that the making of them was a device to evade the laws against usury.

On the trial, the evidence for the plaintiffs was, in brief, as follows: The predecessors of plaintiffs were C. F. Stubbs & Company. Most of the funds belonged to Stubbs. After his death, plaintiffs entered into a partnership and agreed with his executrix to carry on the business and account to her on a basis agreed upon. MacKenzie, who was then a member of the firm of MacKenzie & Company, applied to plaintiffs for advances in 1883. He was informed of the facts concerning the partnership, and together with one of the firm went to their attorney (who represented both the firm and the estate of Stubbs) to arrange a security satisfactory to him. The defendant

was to ship one bale of cotton for each $10 he received. The plaintiffs advanced to MacKenzie & Company $5,000 in 1883, and $1,500 to one J. J. Palmer on the endorsement of MacKenzie. In August, 1883, MacKenzie bought the interest of his partner. He failed to meet the notes at maturity, shipped only 88 bales of cotton, and was charged with commissions on the deficiency. No settlement could be obtained from him until about April 2, 1884, when an adjustment was arrived at, by which plaintiffs charged only half commissions on the cotton not shipped; defendant was to pay $1,000 within a few days; the balance was to be allowed to stand until the following fall at eight per cent., and he agreed to ship cotton to plaintiffs in paying commissions. The first written contract sued on was thus made. The defendant settled the Palmer note by giving his note at eight per cent. interest to maturity, and this was the second written contract sued on. He failed to pay the $1,000, and finally plaintiffs took his note for that amount with eight per cent. interest, making the third written contract sued on. Both parties treated the amounts extended as cash advanced to pay off liabilities. Defendant did not ship any cotton to plaintiffs at all, and when his second note became due, he permitted it to go to protest. The plaintiffs telegraphed him that they would have the note protested and report the fact to the commercial agency. Defendant wrote and telegraphed that a check had been sent to meet the note; but it did not come to hand. The defendant, however, took up the note the same day. The money was advanced solely upon the consideration that cotton was to be shipped to the plaintiffs in the fall and winter, and they were to receive a commission for selling it. They would not advance money otherwise, as they had to borrow largely from and pay interest to the banks to make these advances. If they borrowed at eight per cent. and loaned to their customers at the same rate, they would make no money, but would lose by reason of their expenses in con-

nection with the warehouse, etc. Their profit arises from requiring cotton to be shipped to them and receiving commissions for selling it. It is customary for them, as commission merchants, to make advances to their customers to obtain the handling of their cotton. The defendant knew the plaintiffs had to borrow the money to advance to him.

The defendant testified, in brief, as follows: The advances were all made in 1883; none in 1884. He shipped about 88 bales of cotton to the plaintiffs in 1883, but lost largely in weight under the sales made by them, and this was one reason why he did not wish to ship them more. There were some matters in controversy, and in April, 1884, the balance was determined upon, and the defendant gave his notes therefor, adding interest to maturity at eight per cent. in their face, and giving also the contracts sued on. The plaintiffs did not tell him they were borrowing from the bank; he thought they had enough. They would not carry over the debt for him unless he would give the contracts sued on, saying they could not afford to let their money out at eight per cent. He received nothing for the promise in the contracts, except the loan of money. He made no crop that year. The debt was paid with interest. He sent a check to meet his note, but it was misdirected and did not reach its destination. The plaintiffs threatened him with having the note protested, and reporting him to the commercial agencies. He arranged to pay the note through another firm and did so. He was indignant at the threat made and refused to pay commissions for cotton not shipped, as he had before paid. The extension in 1884 was considered as the same as a loan at that time.

The jury found for the plaintiffs. The defendant moved for a new trial, which was refused, and he excepted.

R. O. LOVETT, for plaintiff in error.

DENMARK & ADAMS; P. P. JOHNSTON; TWIGGS & VERDERY, for defendants.

JACKSON, Chief Justice.

Garnett, Stubbs & Co. sued MacKenzie upon three contracts about the delivery of cotton; so many bales of it at so much per bale; money to be paid whether the cotton was delivered or not. MacKenzie pleaded substatially that the contracts were without legal consideration; being all for the consideration of the loan of money and made cotemporaneous with promissory notes at 8 per cent. given for the loan of the same money, and really a mere device to cover up the usury; that every cent agreed to be paid per bale on the cotton, to be charged whether delivered or not, was usurious; that all the principal and interest at eight per cent. had been already paid for the loan in all three notes mentioned, and all three of these contracts were nothing but agreements to pay more interest at the rate of a dollar and a dollar and twenty-five cents per bale; thus, that all, every cent, was usurious interest on consideration of longer time given on said borrowed money.

Under the charge of the court, the jury found for Garnett, Stubbs & Co. and MacKenzie brings the case here on error for the refusal of a new trial. Among other things, the judge charged that "upon the plea of failure of consideration, I charge you that if defendant made the contract sued on by which he agreed to pay plaintiffs the sums of money set out in consideration of the loan of money furnished him, and you believe that defendant got the loan of money, then the loan of such money is a sufficient consideration to support such contracts. If defendant was owing plaintiffs, and in order to get time on the debt, he gave the contracts sued on, and the plaintiffs indulged him by giving the time, I charge you that such indulgence would be a valuable consideration, and will support the contracts

now sought to be enforced;" and refused to charge that "if the parties made these contracts, and there was no consideration except the loan of money in making them, then plaintiffs cannot recover," and also refused this request, to-wit, that "if defendant borrowed money from plaintiffs, and for the use of such money, he agreed to pay the sum now sued for, they cannot recover, no matter what the same may be called, nor how often the defendant agreed to pay the same."

From these charges and refusals to charge, it appears clear to us that the judge was of the opinion, and so said to the jury, that though the consideration of the contracts sued on was to get time extended for the payment of money borrowed, such indulgence would be a valuable consideration, and will support the contracts.

We think that, in the light of the facts disclosed in this record, the charge is vitally defective. Those facts are that the notes, given at the same time with each of the contracts sued on, carried every cent of interest tolerated by the laws of Georgia, and that therefore every cent more given or bargained to be given for the same loan of money is usurious, and if usurious, cannot be collected itself, because illegal, and if illegal, how can it be a valuable consideration and support the contracts sued on? It is true that afterwards the judge charged generally that usury cannot be covered up by any device whatever, according to our code; but of what value *is* that abstract charge to the defendant, when he had already applied practically the law to this case, and had told the jury that if the consideration of these contracts sued on was the loan of money, it was sufficient, and "if defendant was owing plaintiffs, and in order to get time on the debt, he gave the contracts sued on, and the plaintiffs indulged him by giving the time, I charge you that such indulgence would be a valuable consideration and will support the contracts now sought to be enforced." It strikes us it is as much as to say, "this is no device; this is a case of money loaned and indulgence

in giving further time; the consideration here is valuable and sufficient to uphold these contracts and free from usury or other taint of illegality." The judge should have charged to the effect that if, in addition to eight per cent. already exacted and paid by the defendant, these contracts add an additional sum, whether payable in commissions for handling cotton-bales or in actual coin, for the loan of the same money, these contracts are entirely for usury, and you are authorized by law so to find; but if the consideration is solely for the manipulation of the cotton and not for additional interest over eight per cent. for the loan of the money on time, or its extension of time by renewal, then the law will authorize you to uphold the contract. Look at all the evidence and see what the truth is, what motive operated on the parties, what was the intention of both in making the contracts. Was it to give and get time that these contracts were made, or was it to handle the cotton and make the profits on such handling alone that moved the making the contracts?

We think that the facts of this case, the testimony of the plaintiffs themselves, abundantly demand a charge like the above; and instructions in positive terms that no sort of pretence, or trick, or device, under the Georgia statutes, can hide usury from the eye of her courts; and wherever it is detected, all the usury is forfeited; and if the contracts are all for usury, legal interest having been all paid, none of such contract can be recovered, because all is illegal and all forfeited. The face of the notes and the testimony of the plaintiffs look that way, and the law of the case has not been reached, and will not be until the issue of law, in the light of the facts, is fairly put to the jury on the subject of usury and our statute thereon, without laying down law that if the loan of money and extension of time be the consideration of contracts like these, then the consideration is valuable and upholds the contracts, no matter how much money for the same loan as interest has been agreed upon besides and actually paid.

v 78-17

The case of *Hollis et al. vs. Swift & Son*, 74 *Ga.* 595, settles the law of the proper manner of submitting such a case; and the cases of *Cockle et al. vs.* Flack and others, 93 U. S. R. 344, and Uhfelder & Co. *vs.* Carter's adm'rs, 64 Ala. 547, sustain it.   The South Carolina statute is not like ours, and the decision there in 22 S. C. R. 367, also reported in 53 Am. R. 717, is not the law here.   See code of Ga. §§2051, 2757(a) to (g), inclusive; also §2740.

Judgment reversed.