## WHITE *v.* GUILMARTIN & COMPANY.

If cotton factors advance money in consideration that the other party is to deliver to them, for sale for his account, a bale of cotton for each $10 advanced by a certain time, whether more or less than the whole sum advanced, and to pay the sum advanced by a certain day, and should he fail to deliver all or any part of the cotton, to pay them the amount advanced with interest at eight per cent., and $2 as damages for each bale pledged and not delivered, payable at the times when the cotton should have been delivered, and should the contract be sued on, to pay all costs, expenses and attorneys' fees, it is for the jury to decide, from all the facts, whether or not the stipulations are a cover for usury.

November 11, 1889.

Interest and usury. Cotton factors. Contracts. Practice. Before Judge HINES. Scriven superior court. November term, 1888.

Guilmartin & Co. sued White for $126, with interest from January 1, 1887, and attorneys' fees, alleging thus: On February 26, 1886, they were cotton factors, and as such consented to make advances to White before the first of September thereafter, not to exceed $1,000. They advanced more than that sum, and in consideration thereof and of $1.00 to him paid, White promised to deliver to them or to their order at Savannah, for sale from their warehouse for his account, at least one

bale of cotton of merchantable quality and weight for
each $10 that they may have advanced to him prior to
September 1, 1886, whether more or less than the sum
of advances above named ; enough of said cotton to be
delivered to them or their order by the 15th of October,
1886, to cover all advances which should have been
made to him up to that date, and the balance to be de-
livered by the first day of January, 1887. He further
promised, if he should fail to deliver to plaintiffs or
their order all or any part of the cotton, to pay to them
or their order in cash the full amount owed them for
advances, with interest at 8 per cent. per annum, and
$2 for each bale of cotton so pledged that he should
fail to deliver, as stipulated damages, therein mutually
agreed upon by him and plaintiffs, for his non-fulfilment
of the contract, said damages to be due and payable on
the dates when the cotton above pledged should have
been delivered, and the full amount he may have owed
plaintiffs for advances made prior to October 15, 1886,
to be payable on that day. He further promised, should
the holder of the contract take legal steps to enforce
the same because of his failure to comply with its re-
quirements, to pay all costs and expenses and attorneys'
fees that might be incurred in the case. He paid the
amount advanced to him by them for 1886, and under
the contract should have delivered to them 100 bales
of cotton at the time therein specified, but has only de-
livered 37 bales, and has failed and refused to deliver
the balance or to pay the $2.00 per bale on the balance
not so delivered, as stipulated damages, as agreed.

The defendant pleaded that when plaintiffs presented
the contract sued on to him to be executed, he declined
to sign it on the ground that he did not expect to make
100 bales of cotton that year, as he never did make that
much ; whereupon plaintiffs told him it was their cus-
tom to require contracts like this from their customers,

and they aid not like to vary their custom, but he could
sign the contract and send them his cotton, and it
would be all right; by which he was led to believe that
it was required of him to sign the contract only to pre-
vent a variation of a business rule of plaintiffs, but not
with a view to charge him for any deficit there might
be in the quantity of cotton sent to them.  He sent
them cotton to be sold on his account, more than suf-
ficient to pay $1,000 and all their charges for advances
made to him and on the $1,000, and all amounts claimed
by them, except that sued for.  After the sale of his
cotton, plaintiffs paid over to him the balance on the
sales, and mentioned no claim for the sum now sued
for.  Wherefore he says that in suing him on said con-
tract, they practiced a fraud on him in getting him to
sign the same.—This plea was stricken.

For further plea, he alleged that the amount of cot-
ton in the contract named in excess of that actually
made by him was a temporary contract and every
charge on said $1,000 obtained by him from plaintiffs
"at the time in said contract mentioned and one of the
times therein stated"; that he gave plaintiffs his note
and mortgage for said $1,000 and interest at 8 per cent.
per annum and paid 2½ per cent. for advancing, all of
which has been paid to plaintiffs by the shipment of
his cotton to them under the contract, which note and
mortgage have been delivered to him and the balance
of said cotton sales paid over to him.  He also pleaded
usury.

Upon the trial, plaintiffs introduced the contracts
sued on; and one of them testified as follows:  De-
fendant obtained advances from plaintiffs to the amount
of $1,000 in 1886, under the contract, and sent to them
for sale 35 bales of cotton, which paid up the note and
mortgage given to secure the advances made under the
contract and left in plaintiff's hands a balance, which

was turned over to defendant with his note and mort-
gage. Did not retain the amount due plaintiffs under
the contract sued on for the deficit, because White had
been doing business a number of years with plaintiffs;
they had always found him reliable, and he promised
to ship them more cotton. They wrote to him several
times about shipping more cotton, but received no
reply. After turning over to him the note and mort-
gage and balance of cotton money, witness asked him
about sending plaintiffs more cotton for sale; he prom-
ised to send more, but did not do so. Plaintiffs were
neither bankers nor brokers, but were cotton factors do-
ing business on commission. To carry on their busi-
ness they had to borrow money from the banks; bor-
rowed that year several thousand dollars at 7 per cent.;
could not say positively that the borrowed money went
to defendant. They frequently mixed the borrowed
money with their own. They had to rent an office and
hire help to carry on their business, and expected to
make a reasonable profit out of it. The contract sued
on was not made to evade the usury laws of the State,
but was an honest contract to handle cotton for sale in
connection with their commission business.

The defendant testified as follows: In February,
1886, he went into plaintiffs' office to get advances of
$1,000 to run his crop for that year. Plaintiffs told
him he could get it; wanted him to sign note and
mortgage to secure the amount asked for and also the
contract sued on. He told them that he would give
them the note and mortgage, but as for the contract
to send them 100 bales of cotton he would not sign it,
because he had never made that much cotton in one
year in his life and did not expect to make that much
cotton that year. Herron, one of the plaintiffs, then
said to him, "We don't want to vary from our rules."
Guilmartin then said, "White is all right, let him

have the money." Upon which Herron said, "Well, sign the contract and send us your cotton"; and defendant signed it. When he had sent plaintiffs 35 bales he called on them for a settlement; they turned over to him his note and mortgage and paid him $200 or $300 in money as the balance of the sales of the 35 bales, but said nothing to him about the deficit of cotton, nor did they say anything at that time about his sending them more cotton. He thought nothing of the contract sued on, and supposed he had settled up his matters with them. Sometime after the settlement, Herron met him and asked him if he was not going to ship them any more cotton to pay the deficit in the cotton contract. He replied that he did not know he owed them anything; he was able to pay it. His tenants made that year 15 or 20 bales more than the 35 bales mentioned above. He controlled their cotton, and sent it for sale to Williams & Co. He bought guano that year on his own account and sold it to his neighbors who paid him in cotton, and he sent their cotton also to Williams & Co.

The jury found for plaintiffs the amount sued for, and defendant moved for a new trial on the following grounds:

(1–3) Verdict contrary to law and evidence.

(4) Error in striking the plea.

(5) Error in refusing to allow defendant to amend his plea by alleging that at the time he executed the contract sued on, he had no cotton planted, and this plaintiffs well knew.

The motion was overruled, and defendant excepted.

HOBBY & MATTHEWS and DELL & WADE, for plaintiff in error.

OLIVER & HUMPHRIES and T. H. POTTER, *contra.*

BLANDFORD, Justice.

We are content to place this case upon the decisions

in *Hollis* v. *Swift*, 74 *Ga.* 595; *MacKenzie* v. *Garnett, Stubbs & Co.*, 78 *Ga.* 251; *Callaway* v. *Butler*, 79 *Ga.* 356; *Cockle* v. *Flack*, 93 U. S. 344.

<div align="right">

*Judgment affirmed.*