## DEMING INV. CO. v. GRIGSBY et al.

No. 7792.—Opinion Filed Jan. 30, 1917.

Rehearing Denied March 20, 1917.

(163 Pac. 530.)

**1. Usury—Requisites—Intent.**

To constitute the offense of usury, there must be a corrupt intent to do something which is in violation of the statutes, and the lender must knowingly and intentionally charge a greater rate of interest than that prescribed by law.

**2. Same—Question for Jury.**

The question of intent in usury cases is a question of fact that should be submitted to the jury unless it clearly appears from the face of the instrument itself that usury has been charged.

**3. Usury—Lending Money—Interest.**

An agreement by a borrower to pay all taxes which may in the future be assessed against all interest in real property owned by such borrower, including the interest granted to a lender by virtue of mortgage taken to secure the payment of the money loaned, does not within itself conclusively constitute an usurious contract.

(Syllabus by Jones, C.)

Error from District Court, Pontotoc County; Tom D. McKeown, Judge.

Action by the Deming Investment Company against James E. Grigsby and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

Chas. B. Mitchell and H. A. Kroeger, for plaintiff in error.

James E. Grigsby, for defendants in error.

Opinion by JONES, C. This action was brought in the district court of Pontotoc county, Okla., on March 4, 1913, by the Deming Investment Company, plaintiff in error, which will hereafter be referred to as plaintiff, against James E. Grigsby and Lucy Grigsby et al., defendants in error, who will hereafter be referred to as defendants, praying for judgment on certain promissory notes. and for the foreclosure of a second mortgage given to secure the payment of the same. The facts, briefly stated, are that J. E. Grigsby and wife applied to the Deming Investment Company through its agents in the city of Ada, Pontotoc county, Okla., for a loan of $1,200 on certain residence property belonging to said Grigsbys in the city of Ada. The loan, as is customary, was divided into several different notes, and a first and second mortgage given to secure the various notes, and this suit is based on the notes secured by the second mortgage, and asking for a foreclosure of the mortgage. All the notes given bear 10 per cent. interest per annum. The mortgage also provides for an attorney's fee of $50 in case same is placed in the hands of an attorney for collection. The other defendants mentioned in plaintiff's petition seem to have asserted no rights and claimed no interest in the property, and for that reason no mention will be made of them.

The defendants, Grigsbys, set up as a defense to the payment of said note and the foreclosure of the mortgage the plea of usury, and allege and attempt to show in their answer that a greater rate of interest was charged by plaintiff herein than was authorized by law. The facts, as disclosed by the evidence, tend to show that there were some small charges made at the time of the execution of the papers in question, and that the mortgage which the plaintiff attempts to foreclose provides for the payment of certain taxes by the defendants, which provision is as follows, to wit:

"That during the continuance in force of the instrument the said first party will pay all taxes, charges or assessments, general or special, that may be levied upon said real estate, by the authority of the town or city in which said real estate is situated, or any part thereof when the same shall become by law due and payable, including all taxes and assessments of any kind and character levied upon the interest therein of the mortgagee, or his assigns, and all taxes levied upon said mortgage; and the said mortgagors shall not be entitled to any offsets against the sum hereby secured, for taxes so paid and that said party will exhibit once a year on demand receipts of the proper parties to the said second party, its successors or assigns, showing payment thereof, until the indebtedness hereby secured shall be fully paid."

This provision seems to have constituted the fact upon which the court rendered its judgment in favor of the defendants. The record discloses that at the time the court rendered judgment it stated:

"That inasmuch as the evidence had disclosed the fact that the contract for the payment of interest was for the highest legal rate, that is, 10 per cent., and in addition thereto the first mortgage introduced in evidence had a provision that the defendant was to pay all the taxes that might be assessed against the interest of the plaintiff in the property and its mortgage tax, the transaction reserves or contracted for a greater amount than the highest legal rate of 10 per cent."

—referring to the provision in the. mortgage above quoted. Judging from the briefs of plaintiff in error and defendants in error, we take this to be the most important issue in settling the law of this case. The provision provides that the borrowers, defendants herein, shall pay any assessments that may be levied upon the real estate covered by the mortgage assessed by the authorities of the town or city in which said real estate is situated. This provision, in our judgment, is not sufficient to necessarily taint the contract with usury. In fact we know of no law in this state which would authorize a city to levy any special tax against the interest of the mortgagee in real estate, and there is no contention that any such law existed at the time of the execution of this contract. The rule of law as we understand it to be is laid down in the case of German Savings Bank & Loan Ass'n v. Leavens, 89 Wash, 78, 153 Pac. 1092, that:

"In determining whether or not a given contract for the payment of money is usurious, it is clearly the rule that where the contract is susceptible of two constructions. the one lawful and the other unlawful, the former will be adopted. * * * This is on the theory that presumptions of law are in favor of good faith. Men are presumed to intend to keep within the law, and if their contracts can be enforced within the law, the law will presume such was the intent, and so consider it."

There being no law for any assessment by the city of Ada against real estate and no evidence of any intention or purpose on the part of the mortgagee, the Deming Investment Company, to in any wise enforce the power referred to in the mortgage, we take it that it is mere surplusage, and of no material force or effect, and certainly could not be said in any wise to affect the interest of the mortgagors unless some attempt was made on the part of the mortgagee exacting the payment of some character of taxes

which might be covered by such a provision. In the case of Common Council of City of Detroit v. Board of Assessors of City of Detroit, 91 Mich. 78, 97, 51 N. W. 787, 794 (16 L. R. A. 59), the court, passing on a similar provision, we think lays down the correct rule as to its intention and meaning. The court in that case said:

" * * *An agreement by a mortgagor to pay all taxes which may, in the future, be assessed against all interests in real property owned by such mortgagor, iicluding the interest granted to the mortgagee. Such an. agreement does not amount to a reservation of interest, but is in the nature of an agreement to preserve the estate which constitutes the security, and is no more unlawful than an agreement to keep the property insured with a similar purpose."

We take it that it was not the purpose of the Legislature to limit the power of the parties to contract as they may choose in this regard. We think the court was in error in holding that this provision found in the mortgage was sufficient within itself to constitute usury.

We also think the trial court erred, as assigned by plaintiff in error, in taking the case from the jury and instructing the jury to return a verdict in favor of the defendants for the reason that one of the elements of a usurious contract is a corrupt intention on the part of the lender to charge a greater rate of interest than authorized by law, and in this case the amount of the overcharge, if any, is so small, and there being no direct proof of any intent on the part of the Deming Investment Company, plaintiff herein, to charge a greater rate of interest than that authorized by law, we think this is a case which should have been submitted to the jury under proper instructions to determine whether or not there was any corrupt intent on the part of the lender, plaintiff herein, to charge a usurious rate of interest. This, as we understand, is a question of fact that should have been submitted to the jury. The rule is fairly well stated in the case of Cobb v. Hartenstein (Utah) 152 Pac. 424, in which the court uses the following language:

"We are equally well satisfied that the plaintiff did, in fact, pay more than the amount of interest permitted by our statute. but that is not enough to make the transaction usurious and to authorize a court to take from the defendant both principal and interest and give it to the plaintiff. Let it also be conceded that the transactions constituted a loan from the defendant to the plaintiff, yet, when that fact is conceded, the corrupt or unlawful intent to evade the law is still wholly lacking. The mere fact

that one may pay to another an excessive rate of interest pursuant to a contract, is not always sufficient to authorize a finding of usury. If that were so, every contract upon which more than the amount permitted by the statute were paid would be usurious, regardless of the intention of either the borrower or the lender. If that were the law, intention would cease to be an element in the law of usury. In order to constitute usury, as Mr. Justice Story puts it, 'there must be a corrupt agreement,' in addition to the payment of an excessive rate of interest. There is—there can be—no escape from that conclusion. In our judgment, the trial court was too greatly influenced by the fact that the plaintiff did, in fact, pay to the defendant more than the amount permitted by our statute."

The court being of the opinion that the trial court committed error in directing the jury to render a verdict for the defendants, the case is therefore reversed and remanded.

By the Court: It is so ordered.