BANK OF LUMPKIN *et al. v.* FARMERS STATE BANK.

1. Under the laws of Georgia the exaction of a higher rate of interest for the use of money than eight per centum per annum is unlawful, and prevents the collection of any interest whatever. The ingenuity of man has not devised a contrivance by which usury can be legalized, if it appears that the purpose of the scheme was to exact a larger profit for the use of the money actually advanced than eight per cent. per annum. In determining whether the contract is usurious the substance of the transaction will be critically inspected and analyzed; for the name by which the transaction is denominated is altogether immaterial if it appears that a loan of money was the foundation and basis of agreement which is under consideration.

2. The question as to whether one intends to exact usury by a contrivance or device or whether the alleged charge is bona fide for actual services is for the determination of the jury; and consequently under the facts pleaded in this case the court erred in sustaining the demurrers, thereby adjudging that there was no usury in manner and form as insisted by the defendants.

3. The Court of Appeals did not err in affirming the judgment of the lower court in sustaining the demurrer to the amendments alleging a scheme or device on the part of the Farmers Bank in contracting to reserve ten per cent. as attorney's fees when in fact the bank had contracted to pay its attorney only a portion of said attorney's fees so reserved.

4. The nature of the contract between an attorney and a proposing client and the amount of compensation are not privileged, since the

---

Pleading 31 Cyc. p. 81, n. 10; p. 333, n. 76; p. 667, n. 26 New.

Usury 39 Cyc. p. 918, n. 56, 58, 59; p. 919, n. 60, 64; p. 922, n. 74; p. 925, n. 83; p. 926, n. 85; p. 946, n. 79; p. 959, n. 42; p. 971, n. 98, 4; p. 1007, n. 39; p. 1044, n. 82, 83, 84; p. 1051, n. 42; p. 1058, n. 93.

Witnesses 40 Cyc. p. 2372, n. 58, 59.

relation of attorney and client does not exist until the contract of employment has been made.

No. 4637. FEBRUARY 15, 1926.

Certiorari; from Court of Appeals. 33 *Ga. App.* 117.

The Farmers State Bank, a corporation, brought suit in two counts against the Bank of Lumpkin, a corporation, T. T. James, D. G. Bland, G. W. Pugh, W. B. Perkins, E. L. Harvey, J. S. Morton, Mrs. Cora R. Thompson, Mrs. S. A. Hillman, O. S. Morton, E. E. Humber, and E. E. Humber as administrator of the estate of John N. Davis, and. alleged that the parties defendant were indebted to the plaintiff on nine certain promissory notes aggregating $66,000 principal, less credits of $2500, leaving a balance due of $63,500, besides interest thereon at eight per cent. per annum from July 1, 1923, as provided in said notes, all of which notes bear date of January 6, 1922. The petition was filed on September 25, 1923. The plaintiff asked judgment for the amount of principal and interest and $6,350 attorney's fees as provided in said notes. In the second count of the petition the plaintiff set forth that the Bank of Lumpkin was placed in the hands of the State superintendent of banks on February 9, 1921, by the board of directors of said bank, constituted at that time of the above-named parties defendant. Said board of directors, on or about February 22, 1921, by appropriate resolution of the Bank of Lumpkin, and the approval of the banking department of the State, and also by appropriate resolution and approval of the stockholders of the Bank of Lumpkin, induced the petitioner to enter into liquidation of the affairs of the Bank of Lumpkin, by turning over to petitioner the assets of the Bank of Lumpkin, petitioner in turn assuming the liabilities of said bank, amounting to $206,057.57, less $9,736.47 cash in bank which was credited upon said amount, leaving a balance of $196,321.60, which petitioner has paid off. The assets of the Bank of Lumpkin, turned over to the petitioner, have partially liquidated the amount of the liability aforesaid, leaving the balance on January 6, 1922, of $66,000, for which sum the defendants executed their several notes, nine in number, dated January 6, 1922, bearing eight per cent. interest from date, and ten per cent. attorney's fees, which notes, deducting a credit upon the first note of $2500, amount to $63,500. The proceeds secured

from the Farmers State Bank under the arrangment as aforesaid, by the execution of said notes, were for the purpose of discharging, and did discharge, the liabilities of the Bank of Lumpkin and the defendants. Petitioner has given notice of intention to claim attorney's fees as provided by law, and claims $6,350 judgment as attorney's fees, besides principal and interest on said sum.

The answer of the defendants, so far as the same is material to the questions raised in this court, set up that on February 22, 1921, the Bank of Lumpkin, desiring to go out of business and liquidate its affairs, applied to the plaintiff bank for a loan sufficient to pay off all its indebtedness, $196,321.60, to wit, the sum of $206,057.57, less $9,736.47 cash on hand, leaving a balance of $196,321.60, which said plaintiff bank loaned to said defendant bank. The items composing said liabilities are set forth. On February 22, 1921, the assets of the Bank of Lumpkin were of the book value of $239,682.08, which were received by the Farmers State Bank from the Bank of Lumpkin on February 22, 1921, as collateral security for the above-stated loan. Plaintiff bank took said assets and undertook to collect the same and convert the same into money and apply the same to the liquidation of the said loan. Interest at the rate of eight per cent. was charged on the $196,321.60 from the date of the contract. The money was retained by the Farmers Bank, said bank merely assuming the liabilities of the Lumpkin Bank. These liabilities included $74,383.34 of time certificates not subject to check, most of which were not to become due for many months afterwards, as shown by an itemized list of said certificates of deposit attached to the answer as an exhibit. The Farmers Bank could not be called upon to pay these certificates for six, eight, or more months, some coming due in 1922. These certificates bore interest at the rate of five per cent. The Farmers Bank knew these facts on February 22, 1921, and knew that it would have on deposit all through the year 1921 and into the year 1922 from $10,000 to $25,000 of time deposits. In making said loan the plaintiff bank required of the defendant bank that the collection of the assets of the defendant bank be undertaken by the plaintiff bank and applied as credits on said notes as collected, the collections to be held by the plaintiff bank and not applied as credits until such collections amounted to one or more even thousand dollars. In operation

this requirement resulted in defendant keeping on hand with said bank approximately $900 all the time, which was not applied on said notes, which the plaintiff bank got the benefit of, and on which defendant had to pay eight per cent. interest, and said requirement was a scheme, device, and contrivance on the part of the plaintiff to evade the usury laws and to collect interest on the total liability of the defendant bank and at the same time have in its possession money that should be applied in reduction of said liability.    As a further condition of making said loan, the plaintiff bank required of the defendant bank that it furnish it a man to look after collections due said Bank of Lumpkin, and also to assist plaintiff in its general banking business, and defendant bank furnished a man, E. E. Humber, and paid him $125 per month from February 22, 1921, to the filing of the plea, and during said time the larger part of the time and work of said Humber has been used for the plaintiff bank.    Plaintiff also required the defendant bank to furnish clerical help or pay $50 per month for this purpose, which amount was paid by defendant in addition to the other amounts set out, and the work done by the person which this sum paid has been largely for the interest and work of the plaintiff bank; and these requirements were schemes and contrivances to evade the usury laws of Georgia and to enable the plaintiff to collect for the loan of said sum of money other amounts above the highest legal rate of interest.    Said loan is infected with usury and contains large usury, for the reasons above set out, and because the defendant bank was required to pay interest at the highest legal rate on large sums not paid out by the plaintiff bank for a long period; was required to pay interest at the highest rate after payments made, because not promptly credited, and, in addition to being charged the highest legal rate on money that it had not received and on money that had been repaid, was required to pay $175 per month as a bonus or other excessive charge.    The Farmers Bank has taken and charged $22,869.55 paid it in cash as interest from February 22, 1921, to October, 1923, this being eight per cent. per annum flat charge on $196,321.60, less payments made thereon during said time, and in addition has charged and taken the $175 per month referred to, also has reserved the use of money not needed for unmatured time deposits, and also reserved the use of the

average uncredited deposits of $900; all the above being usurious and done with the knowledge of the plaintiff bank that the same was usury. The sums reserved and taken by the plaintiff bank amount to $27,500, and defendants charge that the plaintiff charged, reserved, and received $5000 as usury over and above the legal rate of interest, said sum being composed of the several items above stated. The notes sued on are renewal notes representing the balance of the original loan, and there has been no other consideration for same, and they are tainted with usury to the extent of $5000, and the plaintiff should accordingly forfeit all interest, to wit, $27,500, and defendants say the suit should be reduced that much.

The plaintiff filed demurrers to this answer, upon various grounds, the only ones which are material to the present question being: (1) That the allegations of the answer constitute no defense to the petition. (2) That the plea of usury is too indefinite. The lower court sustained these two grounds of the demurrer on April 18, 1924. On April 12, 1924, the defendants filed an amendment to their answer, which was allowed subject to demurrer, which alleged, that payments had been made to the plaintiff and credited to the principal debt amounting to $143,321.60, as shown by itemized list attached to the amendment; that payments which have been credited to interest amount to $23,954.17; that the salary of Humber amounted to $4,625, and the $50 per month service charge for clerical help amounted to $1100; that the several items so paid amounted to $173,000.77, which deducted from the original loan of $196,321.60 left $23,320.83, which was the total amount due by the defendants. The itemized list attached to the amendment gave the amount and date of each payment. On April 14, 1924, the plaintiff demurred to this amendment, on the ground that the allegations of the answer, as amended, did not constitute usury as a matter of law. This demurrer was sustained by the court.

At the trial, in response to an amendment to the answer of the defendants, the plaintiff amended its petition by giving credits for the amounts collected on said notes after the filing of the suit, the same aggregating $11,108.57, thus making the principal sum alleged to be due $52,391.43, for which sum, with interest

from the date of filing the amendment, and $6350 attorney's fees, the plaintiff sought judgment.

On the trial of the case the defendants offered an amendment to their answer, which alleged that even though the notes sued on called for all costs of collection including ten per cent. attorney's fees and the suit sought to collect this sum, amounting to $6350, the same could not be recovered legally, because the said amount is unreasonable and usurious, and it was not contemplated by the parties that any such sum should actually be paid to attorneys, and plaintiff has not agreed to pay any such sum in this case, but, as defendants are informed and believe, contracted to pay their attorneys only $2000. Defendants aver that the provision for such an unreasonable sum as $6350 in addition to the highest legal rate of interest charged on said notes constitutes usury. . Defendants further aver that under the contract with the plaintiff bank the Bank of Lumpkin has paid the expense of collecting the collaterals turned over to the plaintiff bank, and plaintiff can not now lawfully collect attorney's fees on the amounts paid to plaintiff out of these collaterals, and that such charge would constitute usury, and that the amounts set out in plaintiff's amendment as collected since the filing of the suit were so collected out of said collaterals. In a second amendment offered at the trial the defendants set up that the charge of ten per cent. as attorney's fees is an excessive charge for the services rendered in the case, and is unreasonable and burdensome, and the services rendered by counsel for the plaintiff were not reasonably worth the sum claimed, and defendants charge that counsel undertook the collection of the notes sued on for the sum of $2000, and defendants are not liable for the sum sued for, but only liable to pay a reasonable amount for the services actually rendered, and this excessive charge would be usurious and would amount to a scheme and device to evade the usury laws of Georgia. The last two amendments were objected to on the ground that the allegations thereof did not constitute usury. The objection was sustained and the amendments disallowed by the court, except as to the allegation that the plaintiff had contracted to pay its attorney only $2000.

On the trial the defendants tendered still another amendment to their answer, which stated that the services of the man and the stenographer furnished at the expense of the Bank of Lumpkin

were not necessary to the handling of the business of the Bank of Lumpkin, but were a burden placed upon the Bank of Lumpkin and the defendants in order to obtain the advantages and benefit of the services of E. E. Humber and the services of the stenographer as a scheme for the plaintiff to obtain usury and to obtain said services in its own business and for its sole use and benefit, and the same were not required on account of the loan to the defendant, and all of the said services were rendered in the general banking business of the plaintiff and not about the collections of the defendant bank, and the same amounts to usury, and plaintiff has forfeited all right to any interest on the notes sued on, and that all payments made as set out should be credited to the principal debt. Plaintiff objected to the allowance of this amendment, on the ground that the same set forth no defense. The objection was sustained by the court and the amendment disallowed.

On the trial the defendants introduced the attorney for the plaintiff as a witness in their behalf, and asked him to state the fee contract between his firm and the plaintiff bank for the collection of the notes in the suit. The question was objected to on the ground that the testimony sought was privileged as a confidential communication. Defendants offered to state what they expected to prove; but the court ruled that this was not necessary, as it was apparent from the question and the plea what answer was expected. The court refused to permit the witness to testify.

The result of the trial was adverse to the defendants, and the case was brought to the Court of Appeals for review. The Court of Appeals affirmed the judgment of the lower court in all particulars, including rulings other than those now presented to this court, and by certiorari the defendants in the superior court, plaintiffs in error here, except to the judgment of the Court of Appeals affirming the rulings of the superior court in the respects above stated.

*G. Y. Harrell, R. S. Wimberly,* and *L. C. Hopkins,* for plaintiffs in error.

*Smith, Hammond & Smith* and *Wallis & Fort,* contra.

RUSSELL, C. J. This case is here on a certiorari to the judgment of the Court of Appeals affirming the judgment of the superior court. The proceedings fully appear from the statement

of facts. The rulings upon the several demurrers and in refusing the amendments offered to the defendants' plea raise a single question. Did the matters set forth in the original plea as amended and in the amendments which were proposed but which were rejected legally present a valid defense? If so, the striking of the answer and the disallowance of the amendments was error, and the judgment of the Court of Appeals in affirming the judgment of the lower court as to this point was consequently error. The substance of the defendants' pleadings as well as the amendments offered by the defendants was that the contract upon which the suit was based was infected with usury, that payments which by virtue of the usury charged had been applied to interest should have been used to reduce the principal sum under the provisions of § 3433 of the Code of 1910, and that by reason of these facts the defendants were not indebted, if at all, to the plaintiff in a sum as large by several thousand dollars as was claimed by the plaintiff. *McGee* v. *Long*, 83 *Ga.* 156 (9 S. E. 1107). The issue as presented to us is thus divided into two subdivisions. (1) Did the pleas and the amendments present the question of usury? (2) If so, was the existence of usury a question for the court or for the jury? Or, to state it as more exactly fitted to this case, were such allegations of fact embodied in the plea or answer of the defendants as that it was error for the court to find as matter of law that the contract was not infected with usury? Section 3436 of the Code declares: "It shall not be lawful for any person, company or corporation to reserve, charge, or take for any loan or advance of money, or forbearance to enforce the collection of any sum of money, any rate of interest greater than eight per centum per annum, either directly or indirectly by way of commission for advances, discount, exchange, or by any contract or contrivance or device whatever." The act of 1916 (Acts 1916, p. 48) repealed sections 3438 and 3442 of the Code, but it did not repeal section 3439, which declares: "The amount of forfeit as aforesaid may be pleaded as a set-off in any action for the recovery of the principal sum loaned or advanced by the defendant in said action," or section 3440, which reiterates the declaration that "No contrivance or arrangement between the parties to any such unlawful transaction, or their privies, shall have the effect to dis-

charge such forfeiture, except it be an actual and full payment of the amount so forfeited."

In *Union Savings Bank & Trust Co.* v. *Dottenheim,* 107 *Ga.* 606 (34 S. E. 217), Mr. Justice Cobb traced the history of the Georgia statutes on usury. From its earliest history this court, in obedience to the law as contained in section 3436, has strongly denounced any artifice by which a lender, taking advantage of the distress and necessities of a borrower, has sought to evade or violate the provisions of Georgia law upon this subject. In *Troutman* v. *Barnett,* 9 *Ga.* 30, Judge Nisbet, in passing upon the case in which the transferee of a judgment not tainted with usury agreed with the defendants to forbear its collection for a time in consideration of usurious interest, and holding that the subsequent agreement being usurious, nothing but the principal due upon the judgment could be collected, said: "The law mercifully restrains both the power and the cupidity of the creditor, by limiting interest upon loans and all contracts to a fixed rate, . . and, to insure against cruel exactions, makes lawful interest irrecoverable, if more is contracted to be paid. Does not the reason apply in this case? Here the plaintiff pays no money in hand to the defendant, but he gives time upon money due, in consideration of usurious interest—he forbears day of payment, because the debtor has paid him usury. It does not differ from an original loan. The money due on the judgment belongs to the plaintiff; it is in the hands of the defendant. It is the same in principle as if the plaintiff had said to the defendant, ' You have in your hands so much money which belongs to me; if you will pay me so much interest per annum, you may retain and use it for a year.' To which the defendant agrees, and the contract is closed. Is not that an usurious contract? It is not questioned but that it is, and, if remaining executory, could not be enforced. The agreement to pay usury thus could be defeated by the plea of usury, and clearly, under the old law, would subject the lender to the forfeiture; and if executed, as it was here very clearly, the usury may be recovered back." In the trial in the lower court, in ruling upon the demurrers as well as the motion to strike the amendments offered by the defendants to their answer, the defendants' allegations had to be treated as true as matter of fact just as if they had been established by un-

contradicted evidence; and hence our first inquiry is as to whether the allegations of the defendants were sufficient either of themselves to show usury or to so indicate "a device or contrivance" as to raise a question as to the intent of the parties upon the subject of usury as would require the submission of this question to a jury. It is well settled, of course, that upon him who alleges usury devolves the burden of showing the existence of usury. *Wilkins* v. *Gibson,* 113 *Ga.* 31 (38 S. E. 374, 84 Am. St. R. 204); *Equitable Mortgage Co.* v. *Watson,* 116 *Ga.* 679 (43 S. E. 49); *Harvard* v. *Davis,* 145 *Ga.* 580 (89 S. E. 740). It is also recognized that an excess of interest or a mistake caused by inadvertence or mistake where there is no intention to violate the statute will not subject the lender to the burden imposed by the statute. *Rushing* v. *Willingham,* 105 *Ga.* 166 (31 S. E. 154). As to this, Judge Montgomery, in delivering the opinion of this court in *Lay* v. *Seago,* 47 *Ga.* 82, 88, in referring to the "thousand and one devices that the ingenuity of man has resorted to for the purpose of evading the usury laws," said: "If it be a device, and the accommodation acceptance is only colorable, it is usury; if not, not. ' It depends principally on the contract being a loan; and the statute uses the words "directly or indirectly;" therefore, in all questions, in whatever respect, repugnant to the statute, we must get at the nature and substance of the transaction; the view of the parties must be ascertained to satisfy the court that there is a loan, and borrowing, and that the substance was to borrow on the one part and to lend on the other; and where the real truth is a loan of money, the wit of man can not find a shift to take it out of the statute :' Lord Mansfield in Floyer· v. Edwards, Cowp. 112. To find out what is ' the real truth,' the jury is the appropriate tribunal to inquire of, and the question should be submitted to them under the charge of the court, that if the transaction was resorted to to evade the usury laws, the taint attaches; if it is a bona fide sale of credit to enable the drawer to borrow money of another, it is not usurious."

There are four requisites of every usurious transaction: (1) A loan or forbearance of money, either express or implied. (2) Upon an understanding that the principal shall or may be returned. (3) And that for such loan or forbearance a greater profit than is authorized by law shall be paid or is agreed to be paid. (4)

That the contract was made with an intent to violate the law. The fourth element may be implied if all the others are expressed upon the face of the contract. Webb on Usury, 17, § 18. Where there is no loan there can be no usury. There are cases which necessarily import a loan; and no disguise, no affectation of sale or barter, can divest them of that character; such, for instance, as a man selling his own note executed in blank. In such instances the law places the stigma of usury upon them without further inquiry. The instrument, having had no virtual existence until the loan or sale was negotiated, can not be regarded as a transfer of property. Webb on Usury, 18, § 20, quoting State Bank *v.* Coquillard, 6 Ind. 232, citing Nichols *v.* Fearson, 7 Pet. 103 (8 L. ed. 623). There can be no question in the present case of the intention of the parties to effect a loan. It matters not that the ultimate result sought was the liquidation of the Bank of Lumpkin. As appears from the statement of facts, the Bank of Lumpkin was about to be placed in the hands of the State banking department. It had $239,682.08 assets at their book value and $9,736.47 cash on hand. It owed $206,057.57. After submission of the question to the stockholders of the Bank of Lumpkin and to the directors as well, it was agreed that the Farmers State Bank would liquidate the affairs of the Bank of Lumpkin rather than the State banking department. Passing by, for the present, other features of the contract which was entered, and the contents of which are given in the statement of facts, it was agreed that the Bank of Lumpkin should turn over to the Farmers State Bank its cash on hand and place in its hands for collection the evidences of indebtedness amounting to $239,682.08 to which we have referred. But this was not all. The indebtedness of the Bank of Lumpkin was warranted not to exceed $206,057.57, and this, when reduced by the cash on hand, left a balance of $196,321.60, for which sum the Bank of Lumpkin agreed to give and did execute its several promissory notes falling due upon different dates, but aggregating the sum of $196,321.60, with interest on each and all of them at the rate of eight per centum per annum, and all of them indorsed by the directors, the plaintiffs in error. It seems to us that the foregoing at least sufficed to raise the implication of a loan; and when the question is doubtful, its solution is not for the court but must be referred to a jury. The second essential

element of usury we think is to be found in the fact that the lender did not rely alone upon the Bank of Lumpkin or take any chance upon a misunderstanding that the principal should be returned, because although the Farmers State Bank had in its hands $239,682.08 (book value) of the assets of the Bank of Lumpkin, and the indebtedness of the latter had been reduced to $196,321.60, the Farmers State Bank assured itself of the payment of the entire debt evidenced by the notes by securing the indorsment of each and all of the directors of the Bank of Lumpkin, male and female alike.

Since it thus appears that the transaction was a loan which was understood should be returned, we come next to inquire whether a greater profit was agreed to be paid than is authorized by Georgia law. That is, whether the extension of credit evidenced by the notes resulted in the Farmers State Bank receiving or contracting and attempting to receive a greater rate of interest than eight per centum per annum. To use the language employed by the General Assembly in the act of 1875 (Acts 1875, p. 105, Civil Code of 1910, § 3440), was it or was it not a "contrivance or arrangement" which is declared to be "unlawful," and entails forfeiture of interest whenever a lender knowingly procures by contract a greater profit for the loan than eight per cent? This question, under the rulings of this court (as well as generally in all other jurisdictions) the jury alone can answer. The plaintiffs in error set up in their pleas that the agreement as to the employment of additional help by the Farmers State Bank at the expense of the Bank of Lumpkin, which services they alleged were not necessary for the purpose, and that the time of these employees was in fact principally devoted to service for the Farmers State Bank itself, was one of the considerations upon which the money was advanced, and that the charge for these services was in fact only a means or device by which the Farmers State Bank should receive more than eight per cent. interest. It is also alleged in the plea that among the debts of the Bank of Lumpkin which the Farmers State Bank was to discharge under the terms of the agreement was $74,383.34 of time certificates which were not required to be paid at the time the $196,321.60 was advanced, because these debts were only due, some of them two months, some three, and others twelve months later than it would be necessary

for the Farmers State Bank to have to meet them. It is alleged that another stipulation in the contract is usurious, to wit, that portion of the contract in which it is stipulated that the Bank of Lumpkin should not be credited with payments upon the notes except when the amounts collected by the Farmers State Bank amounted to an even $1000 or multiples thereof; and that thereby the plaintiff bank had and used for its benefit an average amount of $900 per month, upon which the Bank of Lumpkin was charge-able with interest. It was also contended that the charge for attorney's fees was usurious. We shall deal with these items separately. Is the provision in the contract by means of which the Farmers State Bank was to receive from the Bank of Lumpkin interest in advance upon $74,383.34 of time certificates, although these time certificates were not due at the time of the making of the note, subject to be properly construed as usury? The same question applies to the interest upon deposits of collections received from the assets of the Bank of Lumpkin of less than $1000, instead of promptly crediting each amount in full as collected. We have placed the questions in this form, because, unless the court was authorized to adjudge as matter of law that the result reached in the practical working of the agreement was not usury, it was error to sustain the general demurrer..

It is our opinion that prima facie the extra charges to which we have referred would import a result by which the lender would receive more than eight per centum interest per annum for the use of a considerable portion of the $196,321.60 loaned to the Bank of Lumpkin. Where a lender makes a loan and requires that a part of the sum shall be kept on deposit with the lender, the loan is usurious. In other words, a condition that a borrower shall keep on deposit a certain sum, if made a condition precedent to a loan of money, infects the loan with usury; and the provision as to the allowance of credits only in sums of $1000 or multiples thereof has been held to be usurious in cases of loans or discounts at the highest legal rate of interest, for the reason that the borrower thus pays interest on money which he does not receive or have the use of. 29 Am. & Eng. Enc. Law (2d ed.), 509. So we think as to these two portions of the plea it is clear that it was error to strike. The Court of Appeals itself so held in *Cooper* v. *National Bank*, 21 *Ga. App.* 356 (94 S. E. 611). No matter what amount

of money was retained by the Farmers State Bank, if that amount was included in the $196,321.60 the case would be one of charging interest at the highest legal rate on that much of the loan, and to that extent would constitute usury. *Georgia Southern R. Co.* v. *Trust Co.,* 94 *Ga.* 306 (3) (21 S. E. 701, 32 L. R. A. 208, 47 Am. St. R. 153). It is true that in the last-cited case Justice Samuel Lumpkin, delivering the opinion, found that the transaction involved in that case was not usurious, but he placed his finding squarely upon the ground that as the interest charged was only at the rate of six and one-half per centum, and the loan was for forty years, a calculation made certain that the total interest promised to be paid or payable would nevertheless be at a rate lower than eight per centum. This method of calculation may well be adopted as a sound rule in determining the presence or absence of usury; for the law of this State allows a gross profit of eight per centum per annum for the use of the sum actually loaned, and does not forbid the payment of the interest in installments. The lender may thus, by relending the interest, compound his interest without injury to the borrower in the original transaction. As to these pleas of the defendants, as well as the question of the agreement as to compensation for services to which we have referred, we think the court erred in determining for itself, as matter of law, that it was plain that there was no usury and no intent to exact for the use of the $196,321.60 more than eight per centum interest. It has been frequently held that the court may, in construing a contract, hold it to be usurious as matter of law; but we have been unable to find any case in which a court has held that a contract was not usurious when the validity of a contract was attacked upon the ground that the devices used were employed merely as a cover for usury, and the allegations were such as to properly raise the question whether the contract bespoke a bona fide intention to collect for the use of money no more than the highest rate of interest authorized by law, or whether by the means of outside agreements as a part of the contract of lending a mere contrivance, ingeniously devised, was being used to disguise a case of lending where the result intended was that the lender should obtain, in the language of our Code (§ 3436), "*either directly or indirectly*" a bonus, no matter by what name denominated, in addition to the legal charge for the use of money, produced by the cupidity of the

lender and the necessity of the borrower, in addition to the highest rate allowed by law.

The fourth element essential to constitute usury is an intentional charge of more for the use of money than the highest rate permitted by law. In any case of a loan, where there is doubt as to the intent, it is not a matter for the court to decide. All courts, so far as I am aware, and certainly this court, have decided that the circumstances which may bring in question the bona fides of a lender as to usury as well as the intent are to be submitted to the jury. *Hollis* v. *Swift,* 74 *Ga.* 595; *MacKenzie* v. *Garnett,* 78 *Ga.* 251; *Callaway* v. *Butler,* 79 *Ga.* 356 (7 S. E. 224); *White* v. *Guilmartin,* 83 *Ga.* 640 (10 S. E. 444); *Sanders* v. *Nicolson,* 101 *Ga.* 739 (28 S. E. 976); Dunham *v.* Gould, 8 Am. D. 323 (16 Johns. (N. Y.) 367); Deming Inv. Co. *v.* Grigsby, 65 Okla. 88 (163 Pac. 530); Cockle *v.* Flack, 93 U. S. 344 (33 L. ed. 949). In our opinion the pleas in this case, with the amendments offered, were amply sufficient to at least have put in doubt whether the stipulations as to the several charges for so-called extra services embodied in the contract under the terms of which the Bank of Lumpkin was to be liquidated were usury and were intended to procure for the lender a profit from the use of the money loaned greater than the law permits. In the circumstances it was the duty of the court to have submitted to the jury, under proper instructions, the question whether the stipulations of the contract by which, in addition to the eight per centum interest specified in the note, the Bank of Lumpkin was to pay every possible expense to be incurred by the Farmers State Bank in connection with the matter, were designed and intended merely as reasonable compensation for such services, or whether these charges were so unreasonable as to be nothing more than a cover for usury. The Court of Appeals therefore erred in holding that "The court did not err in sustaining the demurrers of the plaintiff . . to the plea of alleged usury in the transaction. . . There was no error of law upon the trial of the cause, and the evidence demanded a verdict in favor of the plaintiff."

"On the trial below defendants offered two amendments to their answer. These amendments were objected to on the ground that their substance did not constitute usury. The amendments are set out in the bill of exceptions. These amendments made the point

that while the notes called for all costs of collection including 10% attorney's fees, and the suit sought to collect 10% for attorney's fees (an amount in excess of $6,000), as matter of fact the Farmers Bank had contracted to pay its attorney only $2,000, the inference being that it intended to retain the difference, over $4,000, for itself, which would be usury. The objections were sustained and the amendments disallowed, except as to the one allegation that Farmers Bank had contracted to pay its attorney $2,000. Error was assigned on this ruling disallowing these amendments. The Court of Appeals has affirmed this ruling of the trial court. Petitioners except to said ruling of the Court of Appeals and assign error thereon, and aver that said court erred in not holding that the lower court erred when it sustained these objections to the tendered amendments to the answers." The Court of Appeals did not err in affirming the above-stated ruling of the lower court. On demurrer the pleadings are construed most strongly against the pleader. So construed, the amendments did not clearly allege that at the time the contract sued upon was executed between the Farmers Bank and the Bank of Lumpkin, the former bank and the attorney had entered into a scheme or device by which the Farmers Bank was to collect and reserve for its own use a large part of the expenses of collection denominated as attorney's fees, that is, while the contract provided for the collection of ten per cent. attorney's fees, amounting to more than $6,000, that the bank in fact had contracted with the attorney for $2,000, thus retaining more than $4,000 for its own benefit. If the amendment had clearly alleged such to be the facts, the amendment should have been allowed; but the allegations do not make it clear that such scheme or device was entered into at the time of the execution of the contract. It rather leaves the inference that the contract with the attorney was made subsequently.

The terms of an attorney's contract do not come within the privilege provided by section 5785 (2) of the Civil Code. We might cite various rulings in different jurisdictions where there have been various departures from the common-law rule under which all communications between counsel and client were deemed privileged. As to the particular exception now before us we need go no further than the decision of this court in *Smithwick* v.

*Evans,* 24 *Ga.* 461, in which it was held that "An attorney employed in a cause may, when it is relevant, be examined as to the amount of his fee, and the terms on which it is to be paid." In this case Judge McDonald, delivering the opinion of the court, gave a reason original up to that time, but which has since been cited and approved by a large number of courts in other jurisdictions. The reason was not only an expression of sound law but also an utterance of incontrovertible common-sense,—in no case can the relation of attorney and client exist until there has been an employment of the attorney by the client—a contract which necessarily fixes, in some amount or other, the fee. Judge McDonald said: "The exception to the decision of the court sustaining an objection to the admissibility of the testimony of E. H. Beall, Esq., constitutes the next ground of error. Mr. Beall is a subscribing witness to the will, and counsel for the propounder. He had been examined by the propounder of the will. The question was as to the amount of his fee, and the terms on which it was to be paid. It was not a matter of confidential communication from his client that he was interrogated to; nor was it as to a matter or thing which he acquired from his client, or during the existence or by reason of the relationship of client and attorney. It was in regard to a matter which must have been necessarily agreed upon before the relation of client and attorney could exist. It was, prima facie, relevant to the matter in issue. He ought to have been required to answer the question." The facts here are so similar to those in the *Smithwick* case that the decision as to this point must be controlled by the ruling in that case. Upon the subject generally see *O'Brien* v. *Spalding,* 102 *Ga.* 490 (31 S. E. 100, 66 Am. St. R. 202).

<div align="right">

*Judgment reversed. All the Justices concur.*