### EQUITABLE MORTGAGE COMPANY v. WATSON.

116　679
Case 2
s119　280
116　679
Case 2
125　483

1. While to support a plea of usury, filed for the purpose of invalidating a deed given to secure a debt, the evidence need not establish the usury with the particularity required when it is sought to recover back or set off the usury, still the evidence must show with certainty that the transaction was tainted with usury.
2. In a given case, where the lender might reserve a portion of the loan without infecting the transaction with usury, it is incumbent on one who alleges usury to show the exact amount reserved. In such a case evidence from one who represented the borrower, and was in a position to state the exact amount, that "I think about" a stated sum was reserved, is not sufficient to establish usury.
3. There was no evidence to authorize the finding against the special lien prayed for by the plaintiff, and a new trial is ordered on that issue.

Argued November 19, — Decided December 9, 1902.

Complaint.    Before Judge Reagan.    Monroe superior court.
March 18, 1902.

*Payne & Tye, J. A. Noyes,* and *Cabaniss & Willingham,* for
plaintiff in error.    *R. L. Berner,* contra.

Совв, J.    The Equitable Mortgage Company sued Mrs. Watson
on a promissory note for the sum of $2,472.50, principal, and
prayed for a general judgment for principal, interest, and attorney's
fees, and for a special lien on a tract of land which it was alleged
had been conveyed to plaintiff to secure the debt.    The defendant
filed several pleas; one of them being that the debt was infected
with usury, and that the deed was therefore void and the plaintiff
was in no event entitled to the special lien prayed for.    The plea
of usury did not set forth the usury with that particularity required
in pleas of usury where the amount of the usury reserved or paid
is pleaded as a set-off, but there was a general averment that a
stated sum had been reserved as usury, the purpose of the plea not
being to set off the usury, but merely to avoid the deed.    At the
trial the defendant abandoned all of her pleas except that of usury,
admitted a prima facie case for the plaintiff, and assumed the bur-
den of proof on the plea just referred to.    The trial resulted in a
verdict finding in favor of the plaintiff for the principal and inter-
est of its debt, but finding in favor of the defendant on the plea of
usury, and denying the prayer for a special lien.    The case is here
upon a bill of exceptions sued out by the plaintiff, assigning error
upon the overruling of its motion for a new trial, which contains
the general grounds and numerous special grounds.

This is the second verdict in favor of the defendant on the plea
of usury.    The admission of the defendant amounted to a confes-
sion of judgment for the principal and interest of the debt sued
for, so far as the prayer for a general judgment was concerned.    It
was admitted that the averments of the plea were not sufficient to
make the plea of usury good as a plea of set-off, but the plea was
relied on solely for the purpose of attacking the deed.    See, in this
connection, *Hollis* v. *Loan Association,* 104 *Ga.* 318.    We have
carefully considered all of the special grounds of the motion for a
new trial, and if there was any error in any of the rulings complained
of, we are satisfied that none of them were of such a character as to
have required the granting of a new trial.    It becomes necessary,

therefore, to determine whether a new trial should have been granted upon the general grounds. If there is any evidence at all upon which this verdict can rest, we should not reverse the judgment of the trial judge refusing to set it aside. A brief of the material portion of the evidence will now be set forth. The defendant rested her case in chief upon the testimony of her husband, R. H. Watson, taken by interrogatories, which was as follows: "I represented my wife, Mary M. Watson, in the negotiation of the loan with L. L. Ray, who was agent of the Equitable Mortgage Co. She was to get $2,000.00 out of the loan, but lacked $12.00 of getting it." In response to the question, "How much money, if any, was received [reserved?] by the lender at the time the loan was negotiated?" he answered, "I think about $475.00."

The plaintiff introduced the following documentary evidence: (1) Application of defendant to the Atlanta Trust & Banking Company (hereinafter referred to as the Trust Comany) for a loan of $2,300, to which was attached an affidavit of defendant that all statements made therein by her to her agent, L. L. Ray, were true. (2) An agreement addressed to the Trust Company, constituting it the agent of defendant, and authorizing it to negotiate a loan for $2,300 for five years at 6% per annum, payable annually, to be secured by deed to land, etc. (3) Certificate of deposit, certifying that plaintiff had deposited with the Trust Company $2,-012.50, " payable only after certificate on back is properly signed by Mary M. Watson, to the order of L. L. Ray, agent for Mary M. Watson." (4) A paper signed by defendant, certifying that she had signed a note for $2,472.50, secured by real estate, and authorizing L. L. Ray, her agent, to receive the money coming to her from the Trust Company; and papers showing that Ray had collected this money. (5) Papers purporting to be signed by defendant, in form of receipt, reciting that defendant had received from the Trust Company $2,472.50, " less commissions," as agreed upon for loan obtained by it from plaintiff. Alonzo Richardson testified in behalf of plaintiff: In 1890 I was cashier of the Atlanta Trust & Banking Company, and negotiated this loan with the Equitable Mortgage Company. The application and agreement are for $2,-300 at 6% for five years. Instead of writing the note for $2,300, we negotiated it for $2,472.50. We charged no commission on the additional amount of $172.50. This simply netted her $172.50

more money and for the same commission that she had agreed to give. She got $172.50 in cash more than if the note had been written for $2,300, but paid no more commission than if the note had been made for $2,300. The agreement was for a loan of $2,-300 for five years at 6%. On that she agreed to pay a commission of $460. If we had negotiated the loan for $2,300 and taken out the commission, she would have gotten $1,840 net. Instead of that we wrote the note for $2,472.50, for $172.50 more than the application called for, and she got out of it $2,012.50. The Equitable Mortgage Company would not loan the money at 6%, but approximately at 8%. In order to carry out our agreement with Mrs. Watson, and in order not to let her suffer, we wrote the note for $2,472.50, and the Equitable Mortgage Company paid us $2,300, taking out $172.50 as discount. That $172.50 was taken out of the agreed amount for commission with Mrs. Watson, that is, from the fee agreed upon. The note was written for $2,472.50, and this at 6% interest would be $148.35 per annum. Adding the interest for five years to the amount of the note, the principal and interest would amount to $3,214.25. That is, the Equitable Mortgage Company was to receive that in principal and interest on the note. The Equitable Mortgage paid the $2,300 and sent it to the Atlanta Trust & Banking Company. This amount invested at 8% interest would have amounted within five years to $3,220, which is $5.75 more than the amount called for in the notes on which this suit is based. I handled these papers, and what I have said I have stated from my own knowledge.

The following evidence was introduced by defendant in rebuttal: A son of the defendant testified that the signature to the receipt above referred to was not that of his mother. Interrogatories of defendant were introduced, as follows: "How much money was paid over to you, if any at all? I don't remember; I don't think I got a cent. If I got any at all, it was a very small amount."

It is contended by counsel that the testimony of defendant's husband alone demanded a verdict for defendant, and that this testimony is corroborated by the documentary evidence, and is not necessarily in conflict with the testimony of Richardson, but, if this is not true, that the issue was between Richardson and Watson, and the jury had a right to believe the latter in preference to the former. The evidence of Richardson authorized a finding in

favor of the plaintiff; and if there is nothing to contradict his testimony, such a finding was demanded. The uncontradicted evidence showed that the Trust Company was the agent of the defendant, and not the agent of plaintiff; and Richardson swore positively that the Trust Company had received from the plaintiff $2,300, the plaintiff retaining $172.50 only. Under the facts, the retention of this sum would not stamp the transaction as usurious. See *Green* v. *Equitable Mortgage Co.*, 107 *Ga.* 536; *Almand* v. *Equitable Mortgage Co.*, 113 *Ga.* 986 (4). It is said, though, that under the documentary evidence it appears that the Trust Company received from plaintiff only $2,012.50. It is true that the documentary evidence shows that this amount was received by the Trust Company, but that evidence does not show that this was all that was received, and Richardson swears positively that $2,300 was received. If $2,300 was received by the trust company, the transaction is not usurious. It therefore becomes necessary to determine whether there is any evidence on this point, contradicting Richardson, which would authorize a finding for the defendant. The only evidence that can be relied on for this purpose is that of Watson. When that evidence, so far as it relates to the question under discussion, is taken with all its inferences, it establishes positively only that the lender did reserve a portion of the money loaned. It does not show with certainty what was the amount so reserved. The exact language of the witness on this point is, "I think about $475." The burden of proof is on the defendant. To sustain her plea it is not only necessary to show that a sum of money was reserved, but the exact amount of this sum, so that the jury may make the calculation necessary to determine whether the transaction was infected with usury.

As has been shown, under the facts of the case, it was legally possible for the plaintiff to reserve a portion of the loan without making the transaction usurious. There are cases where the reserving of any sum by the lender would stamp the transaction as usurious, but this was not of that class. Whether there was usury depended on the exact amount reserved, and it was incumbent on the defendant to show this amount, the transaction being free from usury on the face of the papers, and all presumptions being against the existence of usury. When the law requires an amount of money to be proved with certainty, this requirement is not met by

proof of "about" that sum.    The testimony of Watson leaves the amount reserved in uncertainty and doubt; and this, too, when it was within his power to show the exact amount with absolute certainty.    He represented his wife in the transaction, and knew the exact amount reserved.    Why leave the matter doubtful, when he could easily make it certain?    He not only qualifies the amount stated by that word of most uncertain meaning, "about," but also makes the uncertain statement still more uncertain and doubtful by the qualifying expression, "I think."    We are of opinion that such evidence is neither sufficient to establish usury, nor even to shift the burden of proof upon the opposite party.    We see nothing in the documentary evidence authorizing a finding that there was any usury in the transaction.    The evidence of Watson, as we have shown, does not authorize such a finding.    Let it be conceded as established that Ray was the agent of the lender; there was no evidence that Ray reserved such an amount as would render the transaction usurious.    Watson swears that Ray was the agent of plaintiff, and that his wife was to receive $2,000, and lacked $12 of receiving that amount.    He does not even testify that Ray reserved the $12.    He swears positively that the *lender* reserved a portion of the loan, and Ray was not the lender.    We are always reluctant to interfere with verdicts, but, after a most careful and anxious investigation, we have been able to reach no other conclusion than that the defendant entirely failed to carry the burden which her admission in open court imposed upon her, and that the finding in her favor was entirely unwarranted.    Counsel for plaintiff in error asked that, in the event of a reversal of the judgment, a direction be given that judgment be entered in favor of the plaintiff for a special lien.    Even if we have the power to give such a direction, we do not feel justified in exercising it in the present case.    The defendant may be able to produce additional evidence on another trial.    We will, however, give the direction that the reversal of the judgment shall not have the effect to set aside the verdict, so far as it finds in favor of the plaintiff a general judgment for the principal and interest of its debt; and that another trial be had on two issues:    Is the plaintiff entitled to the special lien prayed for; and, if so, should the judgment include attorney's fees?

*Judgment reversed, with direction.    All the Justices concurring, except Lumpkin, P. J., absent.*