## 57667. KNIGHT v. FIRST FEDERAL SAVINGS & LOAN ASSOCIATION, SAVANNAH.

CARLEY, Judge.

On June 21, 1966, Knight executed in favor of First Federal a "Security Deed Note" evidencing a loan made for the purpose of consolidating Knight's indebtedness to First Federal in the principal amount of $1,410,730.92 bearing interest at the rate of 6-3/4% a year. The note was payable in monthly installments of $12,527 over a period of fifteen years with the final payment being due on June 21, 1981. Subsequently Knight, a contractor, needed more money due to his underestimation of construction costs on certain college dormitories in Statesboro, Georgia, and requested additional funds of $596,165.22 from First Federal. On November 25, 1966, a second note was executed in the amount of $2,000,000 with interest of 7-1/2% a year repayable in monthly installments ending December 12, 1981. Knight was also required to pay a $20,000 discount and a $20,000 "service fee."

The loan was largely secured by college dormitories including furnishings and appliances located therein. Because of the unusually demanding use to which this personal property would likely be put, it was deemed advisable to set up a reserve fund for maintenance and replacement and to keep the buildings in good condition and repair. When Knight applied to First Federal for the second loan, he furnished a copy of an M. A. I. appraisal of this property which estimated that repairs and replacements would require expenditures in the amount of $30,000 per year. First Federal had the property appraised by its vice president as an in-house appraiser and also by an outside expert, both of whom concurred with Knight's appraiser's opinion that necessary maintenance costs would total $30,000 a year. It was agreed that a non-interest bearing escrow fund to defray

these expenses would be deposited with First Federal; Knight was to tender into said account payments of $2,500 a month. The note provided that these payments would continue until the fund reached the sum of $100,000. The agreement permitted Knight to withdraw periodically from this fund to the extent necessary to replace the worn out collateral "upon the written consent of the Lender which must approve the proposed expenditures."

On August 2, 1968, Knight filed a ten-count suit containing 110 paragraphs alleging that the lending institution had violated the state usury laws as a result of terms and conditions of the $2,000,000 loan.[1] First Federal responded and filed a counterclaim. Some 8-1/2 years later, on September 19, 1977, First Federal moved for partial summary judgment as to Counts 1 and 2. Knight also moved for partial summary judgment. The trial court granted summary judgment in favor of First Federal as to Counts 1 and 2. The same order denied Knight's motion for partial summary judgment. Knight appeals from the grant of summary judgment which had the effect of dismissing Counts 1 and 2 of his complaint.

1. Count 1 alleged, for various reasons, that the $20,000 "service fee" should be treated as interest and used in the computation of usury, and that the non-interest bearing escrow fund for the replacement of the security was an indirect device to enable the lender to reserve, charge or take for a loan or advance of money a true rate of interest greater than 8% a year. On appeal Knight urges that if these questions cannot be resolved in his favor as a matter of law, then they properly should be submitted to a jury.

Although Knight insists at some length that the

---

[1]If the transaction involved here had been consummated after 1969, a suit alleging usury would not be viable. Code Ann. § 57-119 (Ga. L. 1969, pp. 80, 81) now allows parties to loans of more than $100,000 to agree in writing to pay whatever rate of interest they may choose with no restrictions. See *Mercantile Nat. Bank v. Berger,* 129 Ga. App. 707, 708 (2) (200 SE2d 921) (1973).

"service fee" amounts to a second discount which is prohibited unless some service is actually rendered, and that no services were rendered therefor, it appears that when all the alleged interest charges except the escrow deposits are added together they still fall short of the maximum interest rate permitted. At the time this loan was made Code Ann. § 57-101 did not allow any persons, company or corporation to reserve, charge or take for any loan or advance of money any rate of interest greater than 8% per annum "either directly or indirectly by way of commission for advances, discount, exchange or by any contract or contrivance whatever."

Interest of 7-1/2% on $2,000,000 for 15 years amounts to $1,337,244. Even if the discount ($20,000) and service charge ($20,000) are considered as interest, the total "interest" would still be only $1,377,244. Interest on $2,000,000 for 15 years at 8% would be $1,440,347. Even if the interest at the lawful rate were computed on $1,960,000, the amount actually received by Knight—that is, $2,000,000 less $20,000 discount and $20,000 service charge, total interest could have been lawfully charged up to the sum of $1,411,540.

As pointed out by Knight, "[t]here are four requisites of every usurious transaction: (1) A loan or forbearance of money, either express or implied. (2) Upon an understanding that the principal shall or may be returned. (3) And that for such loan or forbearance a greater profit than is authorized by law *shall be paid or is agreed to be paid.* (4) That the contract was made with an intent to violate the law." (Emphasis supplied.) *Bank of Lumpkin v. Farmers State Bank,* 161 Ga. 801, 810 (132 SE 221) (1926). Since a greater profit than was authorized by law could not have been paid as a result of the disputed service charge, the loan was not usurious because of said service charge. Consequently, if usury does, in fact, infect the terms of this loan contract, the existence of the malady must be revealed by an analysis of the character, purpose and effect of the escrowed replacement fund.

2. Knight argues that because First Federal could restrict expenditures for repair and maintenance of the secured property by withholding its approval, it was empowered to have the use of the maximum $100,000

deposit. Thus, Knight submits, the agreement permits accumulation which *could* include excessive interest on the loan and is, therefore, usurious.

The determination of whether or not usury exists must be made as of the time the contract was executed, for "[t]he taint of usury does not result from payment but from the agreement, performed or unperformed. [Cit.]" *Holt v. Rickett,* 142 Ga. App. 337, 339 (3) (238 SE2d 706) (1977). "[T]he terms of the contract" are to be used in computing usury and not "what actually happened," *Martin v. Johnson,* 84 Ga. 481, 486 (10 SE 1092) (1889); and where a transaction apparently lawful in all respects is alleged to be a loan at a usurious rate of interest, it is incumbent upon the person attacking to show that the loan was in fact usurious. *Spence v. Erwin,* 197 Ga. 635 (1) (30 SE2d 50) (1944). However, as a general rule, the intent of the lender to charge and collect more than the legal rate of interest in violation of the law is a question for the jury. E. g., *Bank of Lumpkin v. Farmers State Bank,* 161 Ga. 801, 815, supra.

Knight's calculations as to usury are based upon the maximum total value of the escrow fund without any offsetting credit allowed for the anticipated withdrawals for maintenance of the security, the purpose for which the fund was established. But even if, arguendo, Knight's calculations (sans anticipated withdrawals) are used in determining whether or not the escrow fund was usurious, it cannot be said as a matter of law that the fund is necessarily a "compensating balance," of the type found to be usurious in *Cooper v. National Bank of Savannah,* 21 Ga. App. 356, 363 (2) (94 SE 611) (1917). There the borrower was required at all times during the period of the loan to keep and maintain on deposit with the lending institution a sum amounting to not less than a certain figure, "which could only be used towards the payment of said indebtedness." Not only was the money held in escrow here not to be used towards the payment of the indebtedness, neither the lender nor the borrower was permitted to use the fund for anything other than replacement and maintenance of the collateral. Knight's argument that because the lender's approval of proposed expenditures was required, it had full use of the

fund for personal or arbitrary purposes is not supported by the record. Obviously this requirement was to insure the opposite — that the monies would be properly withdrawn and exclusively applied to the preservation of the security for the rather substantial indebtedness owed by Knight.

Section 545.6-11 of the Federal Rules and Regulations permits a lender to "provide for full protection with respect to taxes, assessments, other governmental levies, *maintenance and repairs."* (Emphasis supplied.) Such special deposits are commonly required by lending institutions as a legitimate business practice, not to extract income, profit or unfair advantage. Only if the lender's requirement that the borrower maintain such a deposit is in fact merely a scheme or device by which the intent to extract excess interest is concealed will the transaction be usurious.

No authority has been cited to us requiring interest to be paid on special deposits to maintain collateral. The majority rule appears to be that funds paid by a mortgagor to an escrow account to be used by the mortgagee to meet tax and insurance obligations upon the property as they accrue do not constitute trust properties such as would render the mortgagee accountable to the mortgagor for any earnings or profits from the funds. Annot., Rights in Escrow Funds for Taxes, § 3, 50 ALR3d 697, 701 (1973).

Under the same reasoning, we conclude that there is no requirement as a matter of law for the lender to pay the borrower interest on funds escrowed for valid business reasons such as a reserve for the replacement of deteriorating equipment. To hold otherwise would cause a vast number of legitimate arrangements for the protection of security to take on the taint of usury. See Gibson v. First Federal Savings & Loan Assn., 364 FSupp. 614 (E.D. Mich S.D. 1973); Bettum v. Montgomery Federal Savings & Loan Assn., 277 A2d 600, 602 (Md. 1971).

Notwithstanding our approval of the general concept of escrowed maintenance charges without payment of interest to the borrower, we are not prepared to hold that the particular arrangement here, which requires that the borrower continue to make payments to the escrow fund until the fund equals a maximum of $100,000, is valid as a

matter of law.

The monthly "escrow" payments of $2,500, representing 1/12th of the estimated annual maintenance charges, are so clearly analogous to the tax and insurance escrow payments held valid in a majority of jurisdictions as discussed above that we find this aspect of the escrow to be reasonable and unobjectionable. However, in the case of escrowed tax and insurance payments the funds are disbursed on an annual basis subject to adjustments and there are no provisions for any accumulation of unexpended monies in excess of the annual estimate. Under such arrangements the maximum amount of the fund is the total of the estimated annual charges. The parties here could have agreed that the monthly installments would continue until the fund reached the amount of the annual estimate (i.e., $30,000), at which time the payments would cease subject to automatic recommencement upon the fund falling below the amount of the annual estimate as a result of disbursements for necessary expenses. If the scheduled payments had been constructed in such a manner, we would have no difficulty in finding the entire arrangement to be usury free.[2]

However, First Federal has not shown a sufficient objective basis supporting the selection of the sum of $100,000 as the amount the fund must reach before the borrower may discontinue the payments. Since a scheme allowing unlimited accumulations without the payment of interest thereon would be obviously unreasonable and facially usurious we find without merit First Federal's contention that the arbitrary fixation of a "lid" of $100,000 was for the borrower's benefit.

Where a transaction is not per se usurious, if it is claimed to be a device to cover up a charge of usury, a question of fact is raised as well as a question of law and it should be submitted to a jury. *Atlanta Savings Bank v. Spencer,* 107 Ga. 629 (4) (33 SE 878) (1899);

[2]Also, of course, there would be no viable basis for attacking the escrow plan under review had there been provisions for payment of interest on the unexpended accumulations.

*Virginia-Carolina Chemical Co. v. Provident Savings &c. Soc.,* 126 Ga. 50 (6) (54 SE 929) (1906); *Bank of Lumpkin v. Farmers State Bank,* 161 Ga. 801 (2), supra; *Pickens Investment Co. v. Jones,* 82 Ga. App. 850 (62 SE2d 753) (1950). As stated in *Atlanta Savings Bank v. Spencer,* supra, at 633, where "there be doubt as to whether the transaction is a cover for usury or a perfectly fair one authorized by law, then it is a question for the jury to determine, from all the facts and circumstances of the case, whether the transaction disclosed is one bona fide in the ordinary course of business, free from the taint of usury, or whether it is a mere cloak and device, under the forms of an ordinary business transaction, to obtain more than the legal rate of interest. [Cits.]"

Had the loan here been made at the maximum rate of interest, as it was in the *Lumpkin* case, then any amount charged over that rate could be attacked as usurious and only the question of the lender's intent would become a jury question. But since First Federal charged only 7-1/2% actual interest, Knight also has to prove that the escrow arrangement was a device to exact interest in excess of 8%, and he must show exactly the amount of the claimed excess and how it was computed. *Equitable Mortgage Co. v. Watson,* 116 Ga. 679 (43 SE 49) (1902). Therefore, there remain genuine issues of material fact with regard to Knight's claim that the requirement of the non-interest bearing escrow fund infects the loan transaction with usury; thus the trial court erred in granting partial summary judgment on Count 1. Code Ann. § 81A-156.

3. In Count 2 Knight asserts that when he was required to refinance his original loan at 6-3/4% interest to obtain the additional $600,000 by agreeing to a new indebtedness of $2,000,000 at 7-1/2% interest, a usurious transaction occurred. He contends that this arrangement caused him to pay in excess of 8% on the new money loaned since the hike in the interest rate on the pre-existing principal balance was a condition precedent to the lender's grant of the additional monies; and that the increased rate of interest constituted a price paid solely for the use of the additional loan and was, therefore, interest.

Arguments to the effect that First Federal took advantage of him because it knew of his financial distress are mere conclusions and are without merit. It is obvious that had Knight been able to obtain the loan from another institution, he would have done so, and that First Federal in fact acted in accordance with prevailing business practices by financing a new loan specifically designated to pay off the existing indebtedness while advancing additional funds.

The contention that the balance of the old note was continued in the new one is untenable for it is clear from the record that there was a novation and the old obligation was discharged. The new note was for a different amount, at a different interest rate and has a different maturity date. "[A]n obligation is renewed when the same obligation is carried forward by the new paper or undertaking, whatever it may be. There may be a change of parties. There may be an increase of security, but there is no renewal unless the obligation is the same. What makes the renewal is an extension of time in which to discharge the obligation. If the obligation changes, there can be no renewal, because there can be no such thing as the re-establishment of an old obligation by the creation of a new obligation different in character." *Lowry National Bank v. Fickett,* 122 Ga. 489, 492 (50 SE 396) (1905). See also 58 AmJur2d 517, Novation, § 1.

Furthermore, " '[t]he payment of usurious interest necessary to entitle the debtor to recover the statutory penalty must be an actual payment in money or money's worth. Nothing less will suffice. A renewal or other substituted obligation given by the original debtor is not a sufficient payment.' " *Cooper v. National Bank of Savannah,* 21 Ga. App. 356, 366, supra. There being no genuine issue of material fact, it, therefore, follows that the trial court correctly granted First Federal's motion for partial summary judgment as to Count 2.

*Judgment affirmed in part and reversed in part. Banke, Acting P. J., and Underwood, J., concur.*

ARGUED APRIL 10, 1979 — DECIDED SEPTEMBER 5, 1979 —.
REHEARING DENIED SEPTEMBER 24, 1979 —

*Thompson & Benken, Louis A. Thompson, David H. Dickey,* for appellant.

*Adams, Adams, Brennan & Gardner, Edward T. Brennan,* for appellee.