### George MOROSANI

v.

### The FIRST NATIONAL BANK OF ATLANTA.

#### Civ. A. No. C81–1553.

United States District Court,
N. D. Georgia,
Atlanta Division.

June 1, 1982.

Michael P. Malakoff, Pittsburgh, Pa., Jerome J. Froelich, Jr., Kenneth P. McDuffie, Martin & McDuffie, Atlanta, Ga., for plaintiff.

Richard M. Langway, Marilyn D. Britwar, Richard M. Kirby, Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for defendant.

### ORDER

ORINDA D. EVANS, District Judge.

This action is before the Court on Defendant's ("the Bank") motion to dismiss the Third and Fourth Counts of Plaintiff's Complaint for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.P.

The two counts in question allege violations of the usury provision of the National Bank Act ("NBA"), 12 U.S.C. § 85. Both counts allege Defendant "charged a higher rate of interest than that agreed" on a $1,600,000 note executed by Plaintiff to Defendant. Count Three alleges that the note contains an agreed upon rate of "two and one-half percent (2½%) per annum plus the prime rate currently charged from time to time by Payee to its best and most creditworthy commercial customers." Count Four asserts that the note provides for interest to be "computed on a 360-day year simple interest basis."

Count Three further alleges that Defendant in fact collected from Plaintiff interest at a rate exceeding 2½ percentage points above the rate charged its "best and most creditworthy commercial customers." Count Four similarly alleges that the Bank computed and collected interest on a basis different from a 360-day year simple interest basis, i.e., a basis which yielded a greater return to the Bank.

12 U.S.C. § 85 provides in pertinent part:

Any association may . . . charge on any loan . . . interest at the rate allowed by the laws of the State . . . where the bank is located . . . and no more. . . .

There is no dispute about the fact that the bank is located in Georgia. Therefore, Defendant argues Georgia law applies, including Ga.Code Ann. § 57–119 which provides:

Notwithstanding any contrary provision of law, any person . . . may in writing agree to pay, and may pay, such rate of interest as such person may determine, contract for, or agree to, on any loan . . . under which the principal balance is to be repaid is $100,000 or more . . . and as to any such transaction, the claim or defense of usury by such person . . . is prohibited. There shall be no restrictions on the amount of interest which may be paid under the laws of the State of Georgia on any loan of $100,000 or more.

Defendant argues that the $1,600,000 loan is exempt from interest limitations under the standards set forth in Ga.Code Ann.

§ 57–119; hence, there is no violation of 12 U.S.C. § 85.

Plaintiff opposes Defendant's motion on several grounds. First, he claims North Carolina usury standards apply. The loan was for a construction job in North Carolina; also, the note states it "shall be construed and enforceable in accordance with the laws of the State of North Carolina." Ga.Code Ann. § 57–106 specifically indicates that the parties to a contract may agree for it to be governed by the usury laws of another state when the contract is executed (i.e., carried out) in that state. Therefore, Plaintiff argues that Georgia law requires application of North Carolina standards; hence, North Carolina usury standards are pertinent in determining whether there has been a violation of 12 U.S.C. § 85.

Plaintiff argues that under the law of either state, the interest charged is excessive if Defendant collected more than the agreed upon rate. Finally, he argues that the mere fact of an interest overcharge constitutes a per se violation of the National Bank Act usury prohibition, without regard to the lender's intent.

Although the phraseology of 12 U.S.C. § 85, which permits a bank to charge interest at the rate "allowed by the laws of the state where the bank is located" appears simple, its application has proven quite difficult.[1] One troublesome issue—the meaning of the word "located"—has been settled.

1. Compare First National Bank in Mena v. Nowlin, 509 F.2d 872, 876 (8th Cir. 1975) (phrase encompasses the entire case law of the state interpreting the state's limitations on usury rather than merely incorporating the numerical usury rate adopted by the state) with Acker v. Provident National Bank, 373 F.Supp. 56, 63 (E.D.Pa.1974), aff'd in part, rev'd in part on other grounds, 512 F.2d 729 (3rd Cir. 1975) (question whether rate of interest charged by national bank is usurious is decided according to the law of the state "involved"), and Haas v. Pittsburgh National Bank, 60 F.R.D. 604, 608 (W.D.Pa.1973) (question is decided according to the law of the state where the transaction occurs) and Meadow Brook National Bank v. Recile, 302 F.Supp. 62, 73–75 (E.D.La.1969) (loans made by national bank in states other than one where bank is located are governed by interest laws of state "where loan is made"

—held that loan made in Louisiana by New York national bank was governed by Louisiana usury laws) and Fisher v. First National Bank of Chicago, 538 F.2d 1284, 1290–91 (7th Cir. 1976), cert. denied, 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 778 (1977) (specifically disapproving of Meadow Brook and holding that statute clearly states that interest on "any loan" is governed by the state where the bank is located which in that case was Illinois, even though the loan was made to the plaintiff in Iowa. Also held that if there is a difference in the allowable rates in the two states in question, a national bank may charge the higher of the two rates). See also FDIC v. Lattimore Land Corp., 656 F.2d 139, 146–150 (5th Cir. 1981) (n.14 stating that Recile is no longer valid under Marquette Nat. Bank v. First of Omaha Service Corp., 439 U.S. 299, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978).

The Supreme Court has held that a bank is "located" in the state designated in its organizational certificate. *Marquette Nat. Bank v. First of Omaha Corp.*, 439 U.S. 299, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978). The issue presented here is whether reference to the "laws" of the state in 12 U.S.C. § 85 includes reference to a state's choice of law rules so as to call into play the substantive usury laws of a state other than the one where the bank is located.

It seems doubtful that the word "laws" in 12 U.S.C. § 85 was intended by Congress to include non-statutory choice of laws rules. The reason is simply that such "rules" are not "laws" as that term is generally understood. Also, usury is an area of the law where certainty and simplicity are extremely desirable. Including choice of laws rules in a state's usury laws for purposes of 12 U.S.C. § 85 undermines those objectives.

Deciding that non-statutory state choice of laws rules are not included in 12 U.S.C. § 85's reference to the "laws of the state" would not, however, settle the issue involved in this case. As previously noted, Georgia has enacted the following statute:

> Every contract shall bear interest according to the law of the place of the contract at the time of the contract unless upon its face it shall be apparent that the intention of the parties referred the execution of the contract to another forum; in this case, the law of the forum shall govern.

Ga.Code Ann. § 57–106. The fact that this choice of laws rule has been codified does, in the Court's opinion, ameliorate concerns over uncertainty of application. It also lends weight to the argument that it is a "law," not a "rule." Also, the Court is mindful of the fact that if it does not treat § 57–106 as a "law" for purposes of 12 U.S.C. § 85, it will be recognizing the possibility that a loan made by a Georgia bank, where the parties have agreed that the usury law of another state should apply, might be nonusurious in a Georgia court applying Georgia law but usurious under 12

U.S.C. § 85 [2] even though 12 U.S.C. § 85 purports to set federal requirements by looking to state law standards. This ironic result is not very satisfactory from a policy standpoint either.

Given this state of affairs, the Court looks to see whether it is really necessary to decide the choice of laws issue. The Court's decision is that since the instant loan is not usurious under either Georgia or North Carolina usury standards, the better course is not to decide this issue.

The Georgia and North Carolina code chapters on usury are similar in general structure although different in numerous respects. Both the Ga.Code Ann. Chapter 57–1 "Interest and Usury" and the North Carolina State Code, Chapter 24 "Interest" begin by setting a general legal rate of interest for loan transactions in the respective states. Ga.Code Ann. § 57–101; N.C. Gen.Stat. § 24–1. Both prohibit charging interest higher than the legal rate. Ga. Code Ann. §§ 57–101; 57–102; N.C.Gen. Stat. § 24–1. Both prescribe civil penalties which the borrower may exact from the lender where the transaction is usurious. In Georgia a borrower may, by plea, Ga. Code Ann. § 57–103, avoid payment of any interest on the obligation when suit is brought by the lender. Ga.Code Ann. § 57–112. He may also recover back any interest paid on a usurious obligation. *Family Home Services, Inc. v. Taylor*, 142 Ga.App. 386, 236 S.E.2d 28 (1977). In North Carolina the borrower may, by counterclaim, recover twice the interest already paid when suit is brought to collect the obligation; the lender forfeits all interest payable but not already paid on the obligation. N.C.Gen.Stat. § 24–2.

Both the Georgia and North Carolina state codes on interest and usury contain sections according special treatment to large loans. Ga.Code Ann. § 57–119 (loans of $100,000.00 or more); N.C.Gen.Stat. § 24–1.1 (loans over $25,000.00). Relevant portions of the text of Ga.Code Ann.

**2.** The Court's belief is that such agreements would most frequently be made where the usury laws of the "other state" permit a higher rate of interest than the laws of the state where the bank is located.

§ 57–119 are set forth above. The relevant portion of the North Carolina statute is the following:

\* \* \* \* \* \*

N.C.Gen.Stat. § 24–1.1 "Contract Rates"

Except as otherwise provided in this Chapter or other applicable law, the parties to a loan- ... may contract in writing for the payment of interest not in excess of:

\* \* \* \* \* \*

(2) Any rate agreed upon by the parties where the principal amount is more than twenty-five thousand dollars ($25,000).

One interpretation of the two statutes is that they exempt from operation of the usury laws the categories of large loans specified. A second, arguably different interpretation is that they exempt those categories of loans, but only where the lender and borrower actually "agree" on the rate of interest.

Plaintiff, however, is not urging either of these interpretations, at least as to the North Carolina statute. He claims the above-quoted statute is intended to define the legal rate of interest on loans exceeding $25,000, instead of providing any sort of exemption from the overall operation of the usury laws. The significance of the difference, he asserts, is that if the maximum legal rate of interest is that "agreed upon," then ipso facto where additional amounts are collected by the lender, the legal rate has been exceeded. When the legal rate has been exceeded, Plaintiff argues, there is a per se violation of 12 U.S.C. § 85, regardless of the lender's intent.

■ Ga.Code Ann. § 57–119 is definitely not a "rate-setting" statute. It flatly states that there shall be no restrictions on the amount of interest which may be paid on loans of $100,000 or more. Thus, it exempts from the operation of Georgia's usury laws loans of $100,000 or more, at least where the parties agree to a rate of interest as they did here.

As noted above, the statute which establishes North Carolina's general legal rate of interest is N.C.Gen.Stat. § 24–1. Obviously, it is a rate-setting statute. The fact that N.C.Gen.Stat. § 24–1.1 is labeled "Contract Rates" and is a numerical offshoot of section 24–1 arguably lends support to Plaintiff's contention that it is a rate-setting statute also.

■ Nonetheless, on closer analysis, the Court finds that section 24–1.1 is an exemption statute, which exempts from the operation of North Carolina's usury laws all loans over $25,000 where the parties have contracted for, i.e., agreed to, an interest rate. As to this class of loans, the permissible rate for purposes of 12 U.S.C. § 85 is "any rate."

The first reason N.C.Gen.Stat. § 24–1.1 is not a "rate-setting" statute is because, unlike general "rate-setting" statutes, Ga. Code Ann. § 57–101; N.C.Gen.Stat. § 24–1, it sets no specific maximum rate of interest. On the contrary, it permits the lender and borrower to determine the rate. When section 24–1.1 is reduced to its simplest terms, it merely says that the lender and borrower may agree to such interest terms as they choose on loans over $25,000. This does not represent a legislative effort to regulate the rate which will be charged, but rather a legislative judgment that regulation is not required.

■ Second, usury laws generally only set a specific interest limit; they also typically give borrowers protection from their own agreements to pay interest rates above the legal limit. See Ga.Code Ann. § 57–112; N.C.Gen.Stat. § 24–2. Therefore, a statute which says that parties may contract for whatever rate of interest they agree to is antithetical to a feature basic to most usury laws—and only fits in the overall scheme if viewed as an exemption.

■ Finally, the determination of whether a loan is usurious must be made based on the loan documents at time of execution. See Haanebrink v. Meyer, 47 N.C.App. 646, 267 S.E.2d 598 (1980), holding that the charging which constitutes a forfeiture under the usury laws is the contract, promise

or agreement to a usurious rate of interest as opposed to the actual payment of that interest.[3] Under Plaintiff's interpretation of section 24–1.1, virtually the only loans courts would be regulating would be loans over $25,000 where the interest collected by the lender was at variance with the interest rate agreed to by the parties. The focus in such cases would necessarily be on the lender's computation and collection of interest after the note is signed, not the note itself as required.

In summary, the Court finds that both Ga.Code Ann. § 57–119 and N.C.Gen.Stat. § 24–1.1 are exemption statutes. Under the undisputed facts presented here, the instant loan fits within both exemptions. In this situation, the interest rate "allowed by the laws of the State ... where the bank is located ..." is "any rate." Having so found, the transaction at issue is not usurious under 12 U.S.C. § 85 as a matter of law. This is true even if the Court were to accept Plaintiff's theory that it is possible for there to be a cause of action under 12 U.S.C. § 85 in a case where there is an interest overcharge, but no intent to charge excessive interest on the lender's part, since the Court has determined that there has been no charge beyond that allowed by state law interest limitations.

Defendant's Motion to Dismiss the Third and Fourth counts of Plaintiff's Complaint is hereby GRANTED.

---

**3.** Similarly, in Georgia it has been held that "[t]he determination of whether or not usury exists must be made as of the time the contract was executed." *Knight v. First Federal Savings & Loan Ass'n.*, 151 Ga.App. 447, 450, 260 S.E.2d 511 (1979). *See also McCrory v. Young*, 158 Ga.App. 678, 680, 282 S.E.2d 163 (1981). *[T]he taint of usury does not result from payment of usurious interest, but from the agreement to do so, whether performed or unper-* formed. *Duderwicz v. Sweetwater Savings Association, supra*, 595 F.2d 1008, at 1014 (emphasis in original), citing *Burns v. Equitable Building & Loan Ass'n.*, 108 Ga. 181, 33 S.E. 856 (1899); *Knight, supra.* " '[T]he terms of the contract' are to be used in computing usury and not 'what actually happened.'" *Knight, supra*, quoting *Martin v. Johnson*, 84 Ga. 481, 486, 10 S.E. 1092 (1890).