**In re Marshall CURTIS, Debtor.**

**Marshall CURTIS**

**v.**

**In re the PILGRIM HEALTH AND LIFE INSURANCE COMPANY, Creditor.**

**Bankruptcy No. 187–00834.**

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

March 15, 1988.

Leon Larke, Augusta, Ga., for debtor.

Benjamin Allen, Augusta, Ga., for creditor.

### MEMORANDUM OF FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

JOHN S. DALIS, Bankruptcy Judge.

The objection of Marshall Curtis (hereinafter "debtor") to the claim of The Pilgrim Health and Life Insurance Company (hereinafter "Pilgrim"), creditor in this Chapter 13 proceeding having come on for hearing pursuant to notice the court makes the following findings of fact and conclusions of law.

On May 31, 1984 Pilgrim loaned the debtor the sum of One Hundred Eighty Five Thousand Two Hundred Fifty and No/100 ($185,250.00) Dollars to enable the debtor to purchase a parcel of commercial real estate known under the present system of street numbering in Augusta, Richmond County, Georgia as 1520 Laney Walker Boulevard. The debtor executed a promissory note in favor of Pilgrim, promising to repay the principal indebtedness in monthly installments over fifteen (15) years at an annual interest rate of fourteen and one-half (14.50%) percent per annum. At the closing of the loan, debtor established an escrow account, in accordance with a binding commitment letter for the loan, for the purpose of paying taxes and insurance on the property. As security for its loan, Pilgrim received from the debtor a first deed to secure debt which contained a power of sale provision to permit non-judicial foreclosure in the event of default under the terms of the promissory note or deed to secure debt. At closing, the debtor also paid an origination fee of Three Thousand Seven Hundred Five and No/100 ($3,705.00) Dollars in accordance with the terms of the commitment letter. At the hearing on this matter, the parties stipulated that the Pilgrim is a secured creditor of the debtor secured by the aforementioned property.

By the terms of the note, the debtor's monthly payment was Two Thousand Five Hundred Twenty Nine and 63/100 ($2,529.63) Dollars for both principal and earned interest. The interest component of each payment was calculated on the basis of the daily interest charge for the use of the unpaid principal balance. None of the interest component on each monthly payment was charge for future unearned interest. In addition to the monthly interest and principal payment of Two Thousand Five Hundred Twenty Nine and 63/100

($2,529.63) Dollars, the debtor by the terms of the commitment letter was obligated to make monthly payments to an escrow account for the payment of ad valorem property taxes on and insurance covering the premises. The initial monthly payments for the purpose was One Hundred Forty Two and 25/100 ($142.25) Dollars for property taxes and One Hundred Thirteen and 58/100 ($113.58) Dollars for insurance which payments represented one-twelfth (1/12) of the annual then applicable property taxes and insurance.

The promissory note in question provided for a prepayment penalty of three (3) years interest charges if the note was paid off during the first three (3) years of the life of the loan. The note contained a provision authorizing Pilgrim to accelerate the indebtedness if the debtor defaulted in his payment schedule. The note further provided that Pilgrim would be entitled to attorney's fees equal to fifteen (15%) percent of the outstanding principal balance and earned interest if the note was accelerated and collected through an attorney.

By profession the debtor is a pharmacist and he uses a portion of the property to operate his business enterprise, a drug store. The remainder of the premises is leased to other individuals for office space. The debtor's monthly receipts from his lessees approximated Two Thousand Seven Hundred and No/100 ($2,700.00) Dollars, or almost as much as the monthly payment due Pilgrim in the amount of Two Thousand Seven Hundred Eighty Five and 46/100 ($2,785.46) Dollars including, principal, earned interest and escrow deposit. Despite the fact that the debtor's monthly rental income yielded funds nearly sufficient to service his debt to Pilgrim, the payment history supplied by Pilgrim on the loan reflects sporadic payments from the debtor. On February 17, 1987 Pilgrim began the foreclosure process. It appears from the payment history, however, that some negotiations took place between the debtor and Pilgrim and the foreclosure process was interrupted. The debtor subsequently made two (2) payments on the indebtedness. Subsequent payments were not made in accordance with the payment schedule, and in June, 1987 Pilgrim began foreclosure proceedings anew.

By letter dated June 29, 1987, Pilgrim's attorney informed the debtor that the note had been accelerated and that the indebtedness was then due in full. The letter made formal demand for the payment and informed Curtis of the pending foreclosure under the power of sale in the deed to secure debt. The letter set forth Pilgrim's intention to seek fifteen (15%) percent attorney's fees as provided for in the note and that the debtor could avoid the fixing of those attorney's fees by paying in full the outstanding principal balance and earned interest within ten (10) days of the receipt of the letter as all provided for under Official Code of Georgia Annotated § 13–1–11 [1]. At the hearing on the objection the parties stipulated that the demand letter from the Pilgrim's attorney was received by the debtor and the ten-day period had run prior to the filing of debtor's Chapter 13 petition on August 3, 1987.

Subsequent to the filing Pilgrim filed proof of claim which claim was subsequently amended. An analysis of Pilgrim's proof of claim was set forth in an order of this court in this Chapter 13 proceeding filed for record January 28, 1988 resolving the Pilgrim's motion for relief from stay. The analysis set forth in the previous order is as follows:

"Pilgrim has filed an amended proof of claim setting forth a secured claim in the amount of Two Hundred Forty One Thousand Four Hundred Thirty Eight and 03/100 ($241,438.03) Dollars with arrearages in the amount of Sixty Eight Thousand Seven Hundred Eighty and 99/100 ($68,780.99) Dollars. An analysis of the Pilgrim's proof of claim indicates that the total secured claim is represented by the following:

| | |
|---|---:|
| Principal balance | $176,810.00 |
| Past due payments through 8/1/87 | 36,210.98 |
| Accumulated late charges | 1,810.55 |
| Accrued attorney's fees | 26,521.50 |

---

**1.** Henceforth Official Code of Georgia Annotated is referenced O.C.G.A.

Accrued advertising costs
(foreclosure)                                    130.00

TOTAL                                    $241,483.03

The amended proof of claim increases the claimed attorney's fees to Thirty Thousand Six Hundred Twenty Nine and 46/100 ($30,629.46) Dollars. The proof of claim is in error in that the total includes principal balance as well as accrued past due payments through August 1, 1987 which payments include principal. The correct amount of the claim is as follows:

Principal balance                        $176,810.00
Accrued interest through
August, 1987                               27,386.40
Accumulated late charge                     1,810.55
Attorney's fees (amended
proof of claim)                            30,629.46
Accrued advertising costs
(foreclosure)                                 130.00

TOTAL                                    $236,766.41

This analysis of the proof of claim of the Pilgrim is not dispositive of the pending objection to the claim of The Pilgrim Health and Life Insurance Company by the debtor, represents the maximum amount of the claim of the Pilgrim and is made for the purposes of this order only."

In addition to the total outstanding balance due under the note, Pilgrim filed claim for prepetition arrearages in its amended claim as follows:

(a) Past due payments
    through August, 1987
    (13 payments at
    $2,785.46) ............... $36,210.98
(b) Accumulated late charges......1,810.55
(c) Attorney's fees ............. 30,629.46
(d) Advertising costs for fore-
    closure ..................... 130.00

                                  $68,780.99

Although the debtor disputes the amount of prepetition arrearage, Pilgrim by a preponderance of the evidence has supported its claim for a thirteen payment prepetition arrearage.

At the hearing on this matter the parties stipulated that the fair market value of the property covered under the security deed is not less than Two Hundred Forty Seven Thousand and No/100 ($247,000.00) Dol-

lars. Based upon this stipulation Pilgrim is an oversecured creditor.

The debtor has objected to the Pilgrim's proof of claim raising the following issues:

1. Whether the promissory note executed by the debtor is usurious under state law?

2. Whether Pilgrim is entitled to fifteen (15%) percent attorney's fees as set forth in its proof of claim?

Regarding the usury claim, the debtor maintains that the provisions of the promissory note with Pilgrim are violative of the State of Georgia's usury laws as the rate of interest charged is excessive. In particular, Curtis argues that the Pilgrim's calculation of the amount due after acceleration, the prepayment penalty clause, the origination fee and the escrow payments are all efforts to achieve a usurious return. Debtor's position is without merit.

In general, Georgia usury laws forbid the charging of interest either directly or indirectly which is in excess of the legal rate. O.C.G.A. § 7–4–1. The consequence of charging an excessive rate of interest is the forfeiture of the entire interest contracted. O.C.G.A. § 7–4–10(a). To prove usury, the debtor must establish the existence of a loan or forbearance of money, either express or implied; an understanding that the principal shall or may be returned; such loan or forbearance provides for a greater profit than is authorized by law; and that such contract was made with the intent to violate the law. *Lumpkin v. Farmers State Bank*, 161 Ga. 801, 132 S.E. 221 (1926); *Duderwicz v. Sweetwater Savings Association*, 595 F.2d 1008 (5th Cir., 1979).

In the present matter, the debtor cannot establish the requisites of a usurious transaction because of the legal impossibility of showing that the interest contracted for in the loan exceeds the legal limit. Although in argument, debtor's counsel has repeatedly referred to the debtor as a consumer and this as a consumer transaction, under the facts of this case, this is not a consumer transaction. O.C.G.A. § 7–4–2(a)(1) provides in pertinent part

"... the parties may establish any rate of interest, expressed in simple interest terms as of the date of the evidence of the indebtedness, and charges and any manner of repayment, or acceleration agreed upon in writing by the parties where the principal amount involved is more than $3,000.00...." The transaction in question is governed by this provision.

■ In spite of the general provision the debtor maintains that various features of the loan are usurious. First, debtor argues that Pilgrim's acceleration of the indebtedness failed to comply with O.C.G.A. § 7-4-2(b)(1) which requires that unearned interest be rebated to the borrower upon acceleration. From the note evidencing the indebtedness and the testimony at the hearing, interest on the loan accrued on a daily basis, without any prepayment of interest prior to the actual accrual of the interest. From the foregoing analysis of the claim, Pilgrim does not seek unearned interest.

■ Debtor's second contention is that the note's prepayment penalty clause makes the note usurious on its face since lenders are prohibited from contracting for unearned interest. The prepayment penalty clause states that if the note was paid off during the first three (3) years of the loan's existence, the debtor would be charged three (3) years' interest as a penalty. Although this penalty is couched in the term "interest," the clause is in the nature of a charge rather than a device to collect unearned interest. The use of the term interest in the prepayment penalty clause is merely a device for determining the amount of the charge. Since the clause is in reality a charge it is permissible under O.C.G.A. § 7-4-2(a)(1).

Debtor's reliance upon the case of *Garner v. Sisson Properties, Inc.*, 198 Ga. 203, 31 S.E.2d 400 (1944) ignores the facts of the *Garner* decision. The *Garner* court found that a creditor's refusal to cancel a security deed where the debtor had paid off the principal prior to maturity unless the interest component of a series of repayment coupons was also paid was an attempt to collect unearned interest. These facts have no bearing on the current fact situation. The *Garner* court suggested that a loan from a third party to finance a real estate purchase, rather than a purchase money arrangement with the seller, might legitimately include a penalty clause for early payment. Additionally, the debtor ignores various amendments to the Georgia usury statute since *Garner* was decided. In particular, O.C.G.A. § 7-4-2(b)(2) was added in 1983 by Ga.L. 1983, p. 1146 § 1, which provides in part: "[u]nless stipulated in the contract, there shall be no prepayment penalty." While this statutory provision does not categorically authorize prepayment penalties, the section implicitly recognizes the validity and non-usurious nature of an express prepayment penalty similar to the one now under consideration.

■ Thirdly, the debtor argues that the loan origination fee mentioned in the commitment letter and charged at closing is usurious. In asserting this contention the debtor relies upon the case of *Williams v. First Bank & Trust Co.*, 154 Ga.App. 879, 269 S.E.2d 923 (1980). This contention is also without merit. An origination fee is not interest and "... amounts paid ... as either an origination fee or discount points ... on any loan secured by interest in real estate shall not be considered interest and shall not be taken into consideration in the calculation of interest ..." O.C.G.A. § 7-4-2(a)(3) Again, the *Williams* case was decided prior to the effective date of the enactment of the present language of O.C.G.A. § 7-4-2(a)(3) and has been superseded by such legislation.

■ Finally, the debtor contends that the escrow account charges amount to a disguised interest charge, thus rendering the loan usurious. In the present fact situation, the parties in writing have agreed to this particular charge and O.C.G.A. § 7-4-2(a)(1) authorizes such a charge. However, an escrow charge can be usurious. *Knight v. First Federal Savings and Loan Association*, 151 Ga.App. 447, 260 S.E.2d 511 (1979). In *Knight,* however, the lender's escrow charges had no realistic correspondence to the actual charges for taxes and insurance on the properties. In

the present action testimony showed that the established monthly escrow charges represented one-twelfth (1/12) of the annual advalorem taxes charged by the City of Augusta, Richmond County and the State of Georgia and the then charged annual insurance premium. From the facts presented there is a realistic correspondence between the monthly escrow deposit and the annual tax liability and insurance premium covering the property.

Regarding the issue of whether Pilgrim is entitled to fifteen (15%) percent attorney's fees as set forth in its proof of claim, Georgia law provides that a creditor may seek attorney's fees in the amount of fifteen (15%) percent of the principal balance due from a defaulted debtor if the note or other evidence of indebtedness obligated the debtor to pay such attorney's fees in the event of default, the loan obligation is accelerated and the debtor is given ten (10) days to avoid the fixing of attorney's fees by payment in full of the entire principal balance and accrued interest then due. O.C.G.A. § 13-1-11.[2] In the present matter, there is no question that in the absence of the bankruptcy process the attorney's fees were enforceable and that Pilgrim could have obtained a judgment to that effect. All the requisites of O.C.G.A. § 13-1-11 were met prior to the filing. The debtor argues that because of the bankruptcy filing, Pilgrim is not entitled to attorney's fees. Pilgrim maintains that the binding precedent of the Eleventh Circuit Court of Appeals in In Re: Eastside Investors 694 F.2d 242 (11th Cir., 1982); rehearing denied 702 F.2d 214 (11th Cir., 1983) requires the attorney's fees to be allowed in the full amount.

In support of debtor's contention, the debtor's plan proposes to cure the default and reinstate the note. It can be argued that the cure operates to deaccelerate the indebtedness and with the debt no longer technically mature the creditor is not entitled to attorney's fees. Section 1322(b)(3) of the Bankruptcy Code empowers a Chapter 13 debtor to propose a plan which provides for the curing or waiving of any default. Authority supports this contention that the allowance of attorney's fees is inappropriate where a plan proposes to cure a default. In Re: Taddeo, 685 F.2d 24 (2d Cir., 1982). The Taddeo analysis was adopted by the Bankruptcy Court for the Northern District of Georgia in finding that the cure of a default in a Chapter 11 proceeding deaccelerates the indebtedness thus preventing the creditor from using O.C.G.A. § 13-1-11 to justify claims for attorney's fees. In Re: Masnorth, 28 B.R. 892 (Bankr.N.D.Ga., 1983). While the Masnorth decision dealt specifically with the effect of cure in the context of a Chapter 11 proceeding, that decision was cited as authority to justify the elimination of attorney's fees in a Chapter 13 case where the debtor's plan proposed to cure defaults. In Re: Davis, 77 B.R. 313 (Bankr.M.D.Ga., 1987). The Bankruptcy Court for the Middle District of Georgia in the Davis decision found that the cure and reinstatement aspect of the debtor's Chapter 13 plan deaccelerated the maturity of the note, thus disentitling the creditor to the contractually set amount of attorney's fees.

The Bankruptcy Code entitles the debtor to propose a plan for the curing of defaults. This provision for the debtor's benefit in effectuating a plan of rehabilitation in a Chapter 13 context would be rendered

---

**2.** O.C.G.A. § 13-1-11 provides in part that:

(a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectible as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to the following provisions:

(1) If such note or other evidence of indebtedness provides for attorney's fees in some specific percent of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness;

(2) If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00.

meaningless if the debtor could undo the default itself but not the collateral consequences of the default. The debtor's financial predicament was the sufficient cause for his seeking relief under Title 11 in the first place, and such relief would be largely illusory if the attorney's fees provisions of the agreement are enforceable in their full amount in a Chapter 13 plan which seeks to cure arrearages. Unfortunately, this analysis does not deal directly with the binding precedent of the Eleventh Circuit Court of Appeals in the *In Re: Eastside Investors* (supra) decision.

The issue more narrowly defined is whether state law sets the standard for the fixing of attorney's fees in matters of defaulted obligations, or whether the Bankruptcy Reform Act of 1978 replaces the state law calculation of reasonable attorney's fees with the reasonableness standard imposed by 11 U.S.C. § 506(b) on awards of attorney's fees to oversecured creditors. In support of its contention that it is entitled to the full fifteen (15%) percent attorney's fees, Pilgrim asserts that since all the prerequisites of O.C.G.A. § 13–1–11 were met prior to the filing of the debtor's Chapter 13 proceeding, the attorney's fees were vested under Georgia law and cannot be altered by this court. Pilgrim relies upon the decision *In Re: Eastside Investors* (supra) which concerns a case brought under Chapter XII of the Bankruptcy Act of 1898 where the secured creditor was entitled to attorney's fees in accordance with the debtor's obligation and Ga.Code Ann. § 20–506 (now O.C.G.A. § 13–1–11). The direct issue before the Eleventh Circuit in that case was whether the claim for attorney's fees could remain part of a creditor's bankruptcy claim where the indebtedness would be collected through the bankruptcy process rather than through foreclosure. In that case the debtor considered this factor to be significant in that the Georgia statute requires that the indebtedness be collected through an attorney. In the debtor's view collection of the debt through the bankruptcy process meant that the debt would not be collected through an attorney, thus preventing the creditor from being entitled to the fees. The Court of Appeals for the

Eleventh Circuit refused to accept this narrow interpretation of the Georgia statute. The court held that the fact that the creditor was compelled to collect its debt through the bankruptcy proceeding, rather than through foreclosure, did not mean that the debt was not being collected through an attorney. To support its conclusion, the court reasoned that the Georgia statute was enacted to permit a creditor to be made whole by permitting recovery of attorney's fees when a debtor defaulted and the creditor had to use the services of an attorney to effectuate collection. *In Re: Eastside Investors* 694 F.2d supra at p. 246. Since an attorney had represented the creditor in the bankruptcy process, the attorney's fees would be appropriate. In the court's *per curiam* opinion denying the debtor's petition for rehearing, the court explains its decision more fully. The court stated that "a petition for reorganization under Chapter XII of the Bankruptcy Act does not diminish the debtor's obligation for attorney's fees if vested when the petition is filed." *In Re: Eastside Investors,* 702 F.2d supra at p. 215.

As Pilgrim had complied with all of the provisions of O.C.G.A. § 13–1–11 for the imposition of fifteen (15%) percent attorney's fees as provided in its note from the debtor prior to the filing of the bankruptcy petition the *In Re: Eastside Investors* decision which is binding precedent in this court appears to obviate the necessity of any further discussion. Were this a decision under the current Bankruptcy Code that assumption would be correct. The Bankruptcy Act of 1898 and decisions interpreting the act place total reliance on state law for the determination of attorney's fee claims. Whether this total reliance on state law for the allowance of attorney's fee claims remains appropriate under current law in the Bankruptcy Code requires an interpretation of congressional intent in the enactment of 11 U.S.C. § 506(b). As originally developed in the judiciary committees of the respective houses of Congress Section 506(b) merely codified the existing law which permitted oversecured creditors to include attorney's fees as part

of their secured claim if the attorney's fees were enforceable under state law. The committee reports of the original bills reflect this intention. *See,* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 356–57 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. On the floor of the Senate an amendment to the proposed legislation was adopted which effectively removed the requirement that the attorney's fees provision be enforceable under state law. In conference committee, the messengers from the House of Representatives acceded to this amendment which became part of the version presented to the two houses, now Section 506(b). In statements made from the House and Senate floors the managers of the Bill explain that "[i]f the security agreement between the two parties provide for attorney's fees, it will be enforced under Title 11 notwithstanding contrary law ..." 124 Cong.Rec.H. 11095 (daily ed. September 28, 1978) (remarks of Rep. Edwards); 124 Cong.Rec.S. 17411 (daily ed. October 6, 1978) (remarks of Senator DeConcini) The amendment was intended to protect the claim for attorney's fees of those oversecured creditors who had not complied with state law and in doing so replaced the Bankruptcy Act reliance upon state standards of enforceability with the federal standard of reasonableness. Various recent decisions in the Courts of Appeals for the Fifth, Fourth and Ninth Circuits reinforce this conclusion.

The Court of Appeals for the Fifth Circuit in *In Re: Hudson Shipbuilders, Inc.,* 794 F.2d 1051 (5th Cir., 1986), held that the secured creditor's full claim of attorney's fees was permitted by applicable state law but was not allowable without inquiry into its reasonableness. The Court found that Congress had "clearly chosen to exercise its broad power to establish a uniform rule respecting the existence and extent of a right [i.e., attorney's fees] by enacting § 506(b)" and found that "paramount federal interest dictates that federal law shall govern." *Id.* at 1058. As a result the Bankruptcy Court is compelled to determine the allowability of a claim for attor-

ney's fees as a portion of a secured creditor's claim with reference to the reasonableness standard under Bankruptcy Code section 506(b), even though the claim would be enforceable in its full amount under state law.

*In Re: 268 Limited,* 789 F.2d 674 (9th Cir., 1986) decided by the Court of Appeals for the Ninth Circuit reached a similar conclusion. In that decision, the deed of trust securing the indebtedness provided that the creditor would be entitled to attorney's fees in the amount of five (5%) percent of the outstanding balance in the event of default. Although these fees were enforceable under applicable state law, the court refused to allow the full amount as part of the secured claim despite the fact that sale of the property securing the debt yielded funds sufficient to pay the contractually set fee. The court found that Bankruptcy Code Section 506(b) preempts state law governing the recoverability of attorney's fees as a part of a secured claim. Congress in the court's view, did not intend to equate enforceability "with reasonableness". Moreover, the court also found that when Congress intended state law to be the determinative gauge in bankruptcy matters it did so specifically as in 11 U.S.C. § 502(b)(1) where state law is the standard for the allowance of claims in general. Had Congress intended state law to govern not only the enforceability but the amount of attorney's fees it would have done so explicitly.

A similar rationale was utilized with a different result by the Court of Appeals for the Fourth Circuit in *Unsecured Creditors Committee v. Walter E. Heller & Company, Southeast, Inc.,* 768 F.2d 580 (4th Cir., 1985). In *Heller,* three (3) days following the filing of the debtor's Chapter 11 petition, the debtor informed a creditor that the debtor intended to use cash collateral in which the creditor had a security interest. The creditor refused to assent and sought a temporary restraining order to enjoin the proposed use. The creditor's promissory note from the debtor included a statutorily permitted clause which provided for fifteen (15%) percent attorney's fees if the creditor

were compelled to take action to protect its security interest. When the creditor filed its claim in the Chapter 11 matter, the creditor included fifteen (15%) percent attorney's fees for the action it had taken in respect to the cash collateral. The unsecured creditors objected, maintaining that the secured creditor had failed to comply with the notice requirements of the North Carolina statute permitting attorney's fees. The court determined that Bankruptcy Code Section 506(b) would permit the secured creditor to seek reasonable attorney's fees despite the failure to comply with the state statutory notice requirements. The court made an extensive survey of the legislative history concerning the enactment of Bankruptcy Code Section 506(b) and concluded that the congressional intent was to provide oversecured creditors with reasonable attorney's fees notwithstanding the failure to comply with a state statute.

▪ The decision of the Court of Appeals for the Eleventh Circuit in *In Re: Eastside Investors* supra stated the applicable law under the Bankruptcy Act of 1898. The decisions referenced above of the Courts of Appeals for the Fourth, Fifth and Ninth Circuits state present bankruptcy law. Bankruptcy Code Section 506(b) established a standard of reasonableness for the allowance of fees costs or charges to an oversecured creditor under the agreement under which such claim arose. Under federal law in this circuit reasonableness in the area of attorney's fees is controlled by *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir., 1974).[3] The *Johnson* factors are taken into considera-

tion in determining the number of allowable hours claimed by the attorney multiplied by a reasonable hourly rate. This allowable hours multiplied by reasonable hourly rate criteria is the lodestar standard outlined in *Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir., 1973). In the present proceeding, Pilgrim has not set forth any evidence to support its claim for attorney's fees in the amount of Thirty Thousand Six Hundred Twenty Nine and 46/100 ($30,629.46) Dollars under the *Johnson* criteria.

It is therefore ORDERED that the objection of the debtor to the claim of Pilgrim pertaining to attorney's fees in the amount of Thirty Thousand Six Hundred Twenty Nine and 46/100 ($30,629.46) Dollars is sustained. The balance of the debtor's objection is denied. The amount of the proof of claim of the Pilgrim is reduced to Two Hundred Six Thousand One Hundred Thirty Six and 95/100 ($206,136.95) Dollars and the prepetition arrearage claim is reduced to Thirty Eight Thousand One Hundred Fifty One and 53/100 ($38,151.53) Dollars. Pursuant to the provisions of 11 U.S.C. § 506(b) and in light of the criteria set forth above, prior to confirmation, Pilgrim may petition this Court for the allowance of reasonable attorney's fees as an oversecured creditor.

---

**3.** The twelve *Johnson* criteria are the time and labor required, the novelty and difficulty of the questions, the skill requisite to perform the legal service properly, the preclusion of other employment by the attorney due to acceptance of the case, the customary fee, whether the fee is fixed or contingent, time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation, and ability of the attorneys, the "undesirability" of the case, the nature and length of the professional relationship with the client, and awards in similar cases. *Johnson v. Georgia Highway Express, Inc.* supra at pp. 717–719.